# Smith v. Birmingham Water Works Co.

*Bill in Equity to enjoin Water Company from cutting off Water Supply and removing Meter.*

1. *Jurisdiction of equity; construction of a contract.*—A court of equity will not entertain a bill which only seeks the construction of a contract in which there is no element of trust; but where a bill is filed to enjoin the infringement of rights alleged to be secured by a contract, a court of equity will construe such contract, in order to determine the rights of the parties litigant growing out of it, although the contract involves no element of trust.

2. *Contract of a water company with a city; construction thereof.*—An ordinance contract between a city and water company provided that the water company was to furnish water "sufficient in quantity for the use of said city and its inhabitants and for all manfacturing purposes;" that the domestic rates for water furnished to the citizens of the city should never exceed certain rates *per annum*, fixed according to the number of rooms in a dwelling, and certain fixed rates for water closets and bath rooms for private families; that the company should have the right to charge for water by measurement at rates not exceeding designated average rates per thousand gallons, according to the daily consumption; and that the company reserved the right to put in meters at its option, for which an annual rental would be charged according to the size of the meter. *Held:* that, under the provisions of the contract,

(a.) The water company was bound to furnish water in sufficient quantity "for the uses of the city, and inhabitants, and for all manufacturing purposes."

(b.) The rates at which the water should be furnished were fixed by the terms of the contract.

(c.) For water furnished for dwellings, and for water closets and bath tubs for private families the rates were fixed at definite amounts *per annum* without regard to quantity or measurement; and for all water furnished for other purposes to the inhabitants and for manufacturing purposes, the company should charge by measurement at certain fixed rates per thousand gallons.

3. *Same; when injunction granted to prevent cutting off watter supply and to have meters put in*—Where, under a contract with a city, a

[Smith v. Birmingham Water Works Co.]

water company has the right to charge for water to be used for certain purposes by measurement, the company can not charge an arbitrary rate for the water used for such purposes, but it must furnish meters to determine the amount used, which must be paid for accordingly; and an injunction will lie to restrain the company from cutting off the supply of water for failure to pay arbitrary rates charged for water used for such purposes, and to compel it to furnish meters.

4. *Same; where rates fixed by contract, reasonable rates not determined by a court of equity*—Where a contract between a water company and a city provides that the water company shall furnish water for dwellings in a city at a certain rate *per annum*, dependent upon the size of the dwelling, and water for other purposes at rates to be fixed by measurement, a court of equity has no right or occasion to determine what rates are reasonable; the rates being fixed by the terms of the contract.

5. *Dwelling; definition thereof.*—The use and purposes for which a building or room are acquired and occupied must be considered in determining whether it is a dwelling; and where the building is used and resided in as a home by a man and his family, or rooms in a building are separately occupied by individuals as sleeping apartments, independently of each other, and to the exclusion of the owner of the building or other persons, such building and each of the rooms so occupied is a dwelling

6. *Same; when rooms in a building used for different purposes are dwellings.*—Where in a building, the first floor of which is used as a store and the second floor for offices, there are also rooms on the second and third floors which are occupied by gentlemen as separate sleeping apartments, such rooms are dwellings, within the meaning of a contract between a water company and the city where said building is situated, by which the water company bound itself to furnish water to dwellings in said city at a fixed rate *per annum.*

7. *Bill to restrain water company from cutting off water from building; when defective for failure to allege proper tender of amount due for water.* Where a contract between a city and water company provides that water for dwellings shall be furnished at certain rates *per annum* and water for other purposes at rates fixed by measurement, a bill filed by the owner of a building in said city, used partly as a dwelling and partly for other purposes, to restrain the water company from cutting off the water from said building and to compel it to put in meters, which avers a tender of the amount due for all water furnished by measurement at the rates fixed by said contract for water used for other purposes than in a dwelling, but does not offer to pay the amount due at the rates fixed for dwellings, is defective.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed by the appellant, Joseph

R. Smith, against the appellee, The Birmingham Water Works Company. The facts of the case are sufficiently stated in the opinion.

LANE & WHITE and JAMES E. WEBB, for appellant.—1. The chancellor by his decree did not dismiss the bill for the want of equity, but dissolved the injunction. Where there are defects, if such defects are amendable on a proper motion to dissolve the injunction, the amendable defects are regarded as amended, and the only question is, whether the facts, if properly averred, justify the maintenance of the injunction.—*Chambers v. Ala. Iron Co.*, 67 Ala. 353; *E. & W. Ala. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala. 275; *Morris C. & B. Co. v. Matthiesen*, 17 N. J. Eq. 385. The dissolution of an injunction, like the granting of an injunction, is largely a matter of discretion, and if irreparable injury will result, as in this case it is apparent it would result to the appellant if the injunction be dissolved, it ought not to be dissolved; and the court erred in dissolving it.—*Jackson v. Jackson*, 91 Ala. 294; *Chambers v. Ala. Iron Co.*, 67 Ala. 353; *Davis v. Sowell & Co.*, 77 Ala. 262; *Satterfield v. John*, 53 Ala. 127.

2. If the contract involved in this case means what the complainant claims it means and the defendant has violated the contractual rights of the complainant, the bill is properly framed, and contains equity. An injunction may be issued to prevent a water company from cutting off its water supply, where the consumer has offered to pay the proper amount for the use of the water, and the company claims a higher rate than is rightfully due.—2 Beach on Private Corporations, 834; *U. S. v. Amer. Water Works Co.*, 37 Fed. Rep. 747; *Chicago &c. R. R. Co. v. Dey*, 35 Fed. Rep. 877; *Ex parte Richard Koehler*, 29 Amer. & Eng. R. R. Cases, 52, and cases cited in note, pp. 54-56; *Shepard v. Gas Light Co.*, 70 Amer. Dec., notes, 486-487; 2 Morawetz on Private Corp., § 1129 a.

3. Even if there was no restraint or limitation fixed by the contract upon the water works company in exacting toll or water rent in such buildings as those owned by the complainant, still under the alternative facts of complainant's bill he is entitled to relief in equity.—*Corning v. Troy, I. & N. Co.*, 40 N. Y. 191; *Boston W. P. Co. v. Boston & W. R. R. Co.*, 16 Pick. 525; *Gardner v. New-*

*burgh*, 2 Johns. Ch. Rep. 162 ; *Belknap v. Belknap*, 2 Johns. Ch. Rep. 473.

4. Where the act threatened has not yet been performed, and where, when performed, the injury resulting therefrom will be permanent and perpetual, when a remedy at law would be inadequate and require a multiplicity of suits, and especially where the defendant is a corporation, a court of equity has power to stay the threatened act by injunction. Having thus the right to retain the bill for an injunction, it has also the right to retain the suit for all purposes of relief, without remitting the complainant to his remedy at common law. In other words, jurisdiction having once rightfully attached, it will be made effectual for the purpose of complete relief.—1 Story's Eq. Jur., § 64 ; *Taylor v. Merchants' Fire Ins. Co.*, 9 How. 390 ; *Miller v. McCann*, 7 Paige 451 ; 1 High on Injunctions, 23, § 1.

5. The water company had no authority to charge more than a reasonable toll or water rent for the water supplied to the complainant or other citizens in the city of Birmingham.—2 Morawetz on Corp., §§ 1129, 1129a ; 8 Amer. & Eng. Encyc of Law, 1269 ; Field on Corporations, 480, note 2 ; *Ex parte Koehler*, 29 Amer. & Eng. R. R. Cas., 56 ; *Williams v. Mutual Gas Co.*, 52 Mich. 502 ; *Shepard v. Gas Light Co.*, 70 Amer. Dec. 479 ; *Merrimac Sav. Bank v. Lowell*, 152 Mass. 560 ; 2 Beach on Priv. Corp., § 834.

6. Charges for water is a toll or *quasi* tax.—*Messenger v. Penn. R. R. Co.*, 36 N. J. Law Rep. 407. The ultimate right to declare whether or not any tax or toll is unreasonable rests in the courts.—*West River Bridge Co. v. Dix*, 6 How. 507 ; Field on Corporations, 480, note 2 ; *Bonaparte v. Camden & Amboy R. R. Co.*, 1 Baldwin 223 ; *Loan Asso. v. Topeka*, 20 Wall. 655 ; 29 Amer. & Eng. R. R. Cas. 57, 58.

7. The buildings involved in this case are in no sense dwellings within the meaning of section 12 of the contract.—*Ex parte Vincent*, 26 Ala. 145 ; *Peters v. State*, 39 Ala. 681 ; *Fire Department v. Buhler*, 35 N. Y. 179 ; *Cerf v. Home Ins. Co.*, 13 Amer. Rep. 165 ; *Workman v. Insurance Co.*, 22 Amer. Dec. 144.

ALEX. T. LONDON, *contra*:—1. The complainant's bill being filed for the purpose of the construction of a con-

tract, which involved no element of trust, is without equity.—*Lakeview Mining &c. Co. v. Hannon*, 93 Ala. 87.

2.   While resting the equity of his bill upon the construction of the contract involved in this case, the complainant asks that the question as to whether the bill contains equity be not passed upon until the final hearing, and the injunction be continued in force until that time, although there was a motion to dissolve the injunction for the want of equity in the bill.   This could not be done.   A mandatory injunction is not granted until after hearing.—2 High on Injunctions, § 616; *Audendried v. P. & R. R.R. Co.*, 68 Pa. St. 370; *N. Y. Printing Co. v. Fitch*, 1 Paige, 97; *Atty. Gen. v. N. J. R. R. Co.*, 2 C. C. Green Ch. (N. J.) 136; *Atty. Gen. v. Patterson*, 1 Stockton, (N. J.) 624.

3.   The bill was without equity, because the complainant had a clear remedy at law.   The water was turned off before the bill was filed; and if the complainant is entitled to any remedy it is *mandamus*.—*Shepard v. Milwaukee Gas L. Co.*, 70 Amer. Dec. 479, s. c. 82 Amer. Dec. 679; Taylor on Corp., §§ 454, 455; 2 Morawetz on Corp., 1132; *Price v. Riverside Co.*, 56 Cal. 431; *Haugen v. Albina Light Co.*, (Oregon) 2 Amer. R. R. & Corp. Rep. 464.

4.   The bill made no proper tender or offer to pay the rates charged for the use of water. An offer to do equity must be in such form as to entitle the defendant to a decree for what the court should determine it was entitled to.—2 High on Injunctions, §§ 447, 497; *Bell v. Thompson*, 34 Ala. 633; *Gentry v. Rogers*, 40 Ala. 442; *Jenkins v. Harrison*, 66 Ala. 345; *Carlisle v. Carlisle*, 77 Ala. 339; *Mortgage Co. v. Sewell*, 92 Ala. 170; *Ross v. New Eng. Mortg. Sec. Co.*, 101 Ala. 362.

5.   The rates charged are not shown to have been unreasonable, and before the court could enjoin the defendant from cutting off the water because of the plaintiff's refusal to pay the oppressive or unreasonable rate, it must be shown that the rate was unauthorized by the charter of the defendant, or manifestly unreasonable on its face.

6.   The court had no authority to fix a rate for water. *Lumbard v. Stearns*, 4 Cush. (Mass.) 60.

7.   The complainant had no right to rely upon the contract, because there was no privity between him and

the defendant.—*Britton v. Green Bay Co.*, 5 Amer. R. R. & Corp. Rep. 444, s. c. 51 N. W. Rep. 84; *Mott v. Cherrvale Co.*, 28 Pac. Rep. 989; *Becker v. Keokuk Water Works*, 79 Iowa 419, s. c. 44 N. W. Rep. 694; *Wiley v. Inhabitants*, 150 Mass. 426.

8. There was an implied contract to pay the rates charged. Being informed in advance what the rates for water would be, and accepting and using the water with this knowledge, the complainant was bound to pay the rates fixed, and this independent of any intent on his part.—*Wolffe v. Wolffe*, 69 Ala. 549; *City Council v. Montpomery Water Works*, 77 Ala. 248; *Vreeland v. O'Neil*, 36 N. J. Eq. 399, s. c. 37 N. J. Eq. 574; 1 Chitty on Contracts, 86, and note.

COLEMAN, J.—The appellant, Joseph R. Smith, the owner of two separate buildings in the city of Birmingham, filed the present bill, praying that the respondent be enjoined from cutting off a supply of water from the buildings, and also that the respondent be enjoined from removing a meter from one of the buildings, and that it be required to restore a meter to the other building from which it had been removed. The bill also charges that the rates demanded for water by the respondent are unreasonable and oppressive, and prays relief in the alternative, that if the charges for water have not been fixed by contract with the city, the court would ascertain, fix and declare a reasonable rate of charges for water. Upon the filing of the bill, after notice, the court awarded a temporary injunction. The respondent moved to dismiss the bill for want of equity, and also moved to dissolve the injunction. At the hearing, the court decreed that the bill as framed was without equity, and dissolved the injunction which had been granted. The bill was not dismissed finally, and leave was granted to amend it, so as to give it equity. The appeal is prosecuted from the decree declaring that the bill was without equity, and from the decree dissolving the injunction.

The court held that the object of the bill was to obtain a construction of a contract in which there was no element of trust, and that under the rule held in *Lakeview Mining & Mfg. Co. v. Hannon*, 93 Ala. 87, there was no equity in the bill. We do not so interpret the bill. The complainant bases his right to relief upon a contract.

[Smith v. Birmingham Water Works Co.]

If the terms of the contract and their meaning be as claimed in the bill and in argument, the complainant is entitled to relief. Chancery courts are continually constructing contracts, in order to determine the rights of suitors growing out of contract; and in adjudicating the rights of the parties in this case, it becomes necessary to construe the contract. The case *Lakeview Mining & Mfg. Co. v. Hannon,* in 93 Ala. 87, *supra,* has no application. The alternative relief rests upon the theory, that if rates have not been fixed by contract with the city, the respondent is bound to furnish water at reasonable rates. The principle invoked in the alternative is, that the Water Works Co. by its charter and contract is bound to supply water to the inhabitants of Birmingham, and has no authority arbitrarily to fix rates at unreasonable and oppressive prices, in the absence of contract stipulation fixing the rate. The bill shows, that each of the buildings have three stories, and that mercantile business is carried on in the first floor of each; that the second and third stories, are divided into many separate rooms, some of which are occupied in the day time as offices by lawyers, doctors and dentists, and that other rooms are occupied by unmarried men as sleeping apartments.

We will cite here so much of the contract between the city of Birmingham and the Water Works Company, as we think necessary for a proper consideration of the case :

"An ordinance to provide for a more efficient system of water works for the city of Birmingham, Ala.

"Section 1. Be it ordained by the Mayor and Aldermen of Birmingham : that the Birmingham Water Works Company, a corporation incorporated under the laws of the State of Alabama, the successors and assignees of the Elyton Land Company as to all of its rights, franchises and privileges, its successors and assigns, is hereby authorized and empowered to erect and maintain one or more suitable water works pumping stations in or near the said city of Birmingham, and to lay down, maintain and use water mains, pipes, aqueducts and other fixtures to, in and through any of the streets, avenues, alleys and public grounds in said city, for the conveyance of water in, and through said city,

21

[Smith v. Birmingham Water Works Co.]

for the use of said city and its inhabitants as herein pro-
vided.

"Section 2.   Be it further ordained : that the rights
and privileges herein and hereby conferred are the sub-
ject of a contract between said Mayor and Aldermen of
Birmingham and the Birmingham Water Works Com-
pany, its successors and assigns as herein set forth.

"Section 3.   Be it further ordained : that the water
so furnished shall be clear, wholesome and suitable for
all domestic and all ordinary manufacturing purposes,
and sufficient in quantity for the uses of said city and
its inhabitants and for all manufacturing purposes.

"Section 12.   Be it further ordained : that from the
first day of July, 1888, the domestic rates for water fur-
nished under this contract to the citizens of Birming-
ham, shall never exceed the following rates *per annum,*
viz. :

     Dwellings of three rooms or less........ $8.00
     Each additional room under ten ........   1.00
     Each additional room over ten .........    .50
     Water closet for private family.........   5.00
     Additional closet for same family or ser-
        vants .........................   2.50
     Bath tubs for private family ...........   4.00

The company shall have the right to charge for water
by measurement at rates not exceeding the average rates
named below :

Measured water will be charged for as as follows :
For daily consumption of
1000 gallons or less...................30 cents.
1000 to 1500  gallons................27½ cents.
1500 to 2000  gallons................. 25 cents.
2000 to 3000  gallons................22½ cents.
3000 to 4000 gallons...................20 cents.
4000 to 5000 gallons.................17½ cents.
In excess of 5000 gallons daily :
For 1st  5,000 gallons daily, 15 cents per 1000.
  "  2nd 5,000    "      "   14  "    "    "
  "  3rd 5,000    "      "   13  "    "    "
  "  4th 5,000    "      "   12  "    "    "
  "  5th 5,000    "      "   11  "    "    "
  "  6th 5,000    "      "   10  "    "    "
  "  7th 5,000    "      "    9  "    "    "
  "  8th 5,000    "      "    8  "    "    "

All in excess of 40,000 gallons daily 8 cents per thousand gallons.

The company reserves the right to put in meters at its option, for which an annual rental will be charged as follows :

| | | | | |
|---|---|---|---|---|
| $\frac{1}{2}$ " | Meter ............. | $ 3.00 | per annum. | |
| $\frac{3}{4}$ " | Meter ............. | 5.00 | " | " |
| 1 " | Meter ............. | 7.50 | " | " |
| $1\frac{1}{2}$ " | Meter ............. | 12.00 | " | " |
| 2 " | Meter ............. | 20.00 | " | " |
| 3 " | Meter ............. | 30.00 | " | " |
| 4 " | Meter ............. | 50.00 | " | " | " |

We think it clear from these provisions of the contract, that the Water Works Company is bound to furnish water in sufficient quantity "for the uses of the city and its inhabitants, and for all manufacturing purposes." We think it clear, also, that the rates at which the water should be furnished were fixed by the terms of the contract; that for the city by a different section of the contract, "for other purposes than fire protection and practice of firemen, at the rate of fifteen cents for one thousand gallons." The contract plainly means that the company should charge for all water furnished to the inhabitants of Birmingham, and for manufacuring purposes, by measurement in all cases, except where special provision was otherwise made.. The only cases in which water furnished to the "inhabitants" is not to be charged for by measurement, are specified in the first part of section 12, *supra*, and include only "dwellings," and then for "water closets" and "bath tubs" for private families. For these the contract fixes a definite amount for water furnished without regard to measurement. We would not be understood as holding that the designated classes could abuse the privileges by unnecessary extravagance or waste of water; but for the use of water in reasonable quantities, sufficient without inconvenient economy for the purposes mentioned, the rates are fixed. The difficulty arises in determining what the word "dwelling" signifies, as used in this contract. We think it clear that the lower rooms used as stores, and the rooms occupied as offices by lawyers, doctors, &c., are not dwellings, and the water furnished for these, must be paid for by measurement. The bill shows that

many rooms are occupied by gentlemen as sleeping apartments, and the question arises whether rooms thus occupied are dwellings within the meaning of the contract. A dwelling may consist of but one room, and where the entire building has but a single room and is occupied by a single person as a home or residence, that is his dwelling. Several families may furnish separate apartments in the same building and occupy the same separately and independently of each other, and each family may thus acquire several dwellings in the same building. A person without a family may have a dwelling. A house rented and resided in as a home by the tenant to the exclusion of the owner becomes a dwelling. In the case of *Cerf v. Home Insurance Co.*, 44 Cal. 320, 13 Amer. Rep. 165, the building was destroyed by fire. The back room of the building was used by the owner and his clerk as sleeping apartments, and the front as a store. The policy permitted the use of kerosene oil for light in a dwelling, but prohibited its use as a light in the store. On the night of the fire a lamp supplied with kerosene oil was left burning on the counter in the store for protection against burglars. It was held that although the small back room might in itself be a dwelling, it was distinguishable from the large room, which was held to be unquestionably a store.

In the notes to 6 Amer. & Eng. Encyc. of Law, pp. 101–105, may be found many citations where tenants of rooms have acquired a "dwelling" within the meaning of certain statutory provisions. The use and purpose for which a building or rooms are acquired must be considered in determining whether it is a dwelling. A person confined in a building, as when imprisoned in a jail, or a mere transient occupancy of a building or rooms, to which no definite right is acquired, to the exclusion of control by the owner or landlord, does not impress the building or room with the character of a dwelling.

Section 12 declares that water furnished under this contract to the citizens of Birmingham, shall never exceed the following rates *per annum*, viz. : Dwellings of three rooms or less $8.00 ; each additional room under ten, $1.00 ; each additional room over ten, .50. Whether the building is of a single room with one occupant, or three rooms with a dozen occupants, the rate is fixed at $8.00 *per annum* for either ; and then there is an addi-

tional charge for each room over three and under ten, and then for each room over ten. The owner of a building may, if suitably constructed, devote a portion of it to manufacuring purposes, another part to stores, another to offices, and another to dwellings. The water rates are fixed by the contract accordingly. The averments of the bill negative the fact that any part of the buildings are occupied by families, or are used for a hotel or boarding house. Its averments are that the lower rooms are used for stores, and the second and third stories are occupied and used as offices, and for sleeping apartments by gentlemen. Water used in either would come under the head of domestic purposes as distinguished from manufacturing purposes. We do not think it permissible to appropriate a portion of a building to purposes of business or trade, and a part to dwellings, and as it may be to the interest of the owner claim that it is altogether the one or the other; nor is such a privilege granted to the Water Works Company. The contract between the city and respondent, which is not assailed, distinguishes the one from the other, by different rates, and the parties are bound by its terms. Construing section 12 in connection with sections 1, 2, and 3 of the contract, our conclusion is that the word "citizen," as used in section 12 has the same meaning and operation as "inhabitant," and that all the water to be furnished was classed under the heads of "domestic" and "manufacturing purposes," and the rates for all purposes was the subject of contract between the city and the respondent, and regulated by it.

In all cases where the defendant has the right to charge for water by measurement, and demand pay for water furnished, it is incumbent on the respondent to furnish meters. There is no authority to the respondent to refuse to furnish meters, and fix an arbitrary price, where water is to be paid for by measurement, and unless payment is made according to such arbitrary rate, to cut off the supply of water. The damage in such a case would be irreparable, and a court of equity would not hesitate to interfere by injunction. It follows from these conclusions that the water which should be furnished to complainant's buildings are provided for and regulated by contract, and that it is unnecessary to determine whether a court of equity has jurisdiction to declare and fix a rate of charges when none have been

fixed, or to declare that the charges made by respondent were unreasonable. On this question see case of *Reagan v. Farmers' Loan & Trust Co.*, 14 Sup. Ct. Rep., No. 33, p. 1047.

The complainant is not entitled to the alternate relief prayed for on the facts stated in the bill. Does the complainant offer to do equity?

We can not consider the conclusion of the pleader except so far as sustained by the averments of facts. Construing the pleadings strictly against the pleader, the facts as stated fail to show that the buildings in part were not used as "dwellings" within the meaning of the contract. It is not necessary that a room or rooms or building be occupied by a family, to constitute a dwelling. If the owner has appropriated and devoted certain rooms of these buildings to such uses, and they are thus used, as that if there were no other rooms in the building than those thus occupied, the building would thereby be a "dwelling" within the meaning of the contract as we have declared, and to such extent they must be regarded as dwellings.

In the bill it is averred that complainant has tendered and has always been ready to pay for all water furnished to these buildings by measurement at the rates fixed for measured water by the contract. The bill does not show that complainant has offered to pay, nor does he offer in the bill to pay, at the rates fixed by the contract for dwellings. In this respect, as at present framed, the bill is defective. It may be that the complainant may so amend his bill as to give it equity, either by averring such tender, or by so stating the facts as to show that no part of either of said buildings is devoted to such purposes and use as to come within the provision of the contract which prescribes a rate to be paid for water for "dwellings." The appellee seems to be amply secured against all damages. A decree will be here rendered reinstating the injunction and granting to complainant thirty days within which to amend the bill as he may be advised, with directions that unless amended so as to give the bill equity, within the time prescribed, upon motion of the respondent made in the court below, after notice as prescribed in the rules of chancery practice, the injunction shall be dissolved and the bill dismissed.

The appellant will pay the costs of this appeal in this court and the court below.

Modified, affirmed and remanded.