## SAN DIEGO LAND & TOWN CO. OF MAINE v. SHARP.

(Circuit Court of Appeals, Ninth Circuit. October 19, 1899.)

No. 525.

1. IRRIGATION—RIGHT OF CONSUMER TO CONTINUED USE OF WATER—CALIFORNIA STATUTE.
    Under Civ. Code Cal. § 552, which gives to any owner who is cultivating land within the flow of any ditch owned by a corporation engaged in supplying water, and who has been furnished water by such corporation to irrigate his land, the right to the continued use of such water at such rates and terms as may be established by the corporation in pursuance of law, the fact that such a landowner entered into a contract with the corporation by which he agreed to pay a higher rental than was charged others for water, to be supplied to his land for a term of years, and also agreed to waive all his rights under the statute, does not deprive him of the right to the continued use of such water after the contract has expired, or entitle the corporation to demand a renewal of the contract as a condition to furnishing it. Under the statute as construed by the supreme court of the state, the rights of the landowner are not dependent on the means by which the supply was originally obtained, but the water, once supplied, is appropriated to public use, subject to regulation by law, and the covenants of the contract, whether valid or not, were not binding after its expiration.

2. SAME.
    A consumer whose land is situated within the flow of the distributing system of an irrigation company, and who has, by means of water thereby supplied to him, made valuable improvements on his land, cannot be

thereafter lawfully deprived of such water, in order that the distributor may supply later comers, even though a larger area, by reason of more favorable conditions, may thus be brought under cultivation.

Appeal from the Circuit Court of the United States for the Southern District of California.

John D. Works and Lewis R. Works, for appellant.
A. Haines and L. Ward, for appellee.

Before GILBERT and MORROW, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. It appears from the record in this case that a suit was brought by the bondholders of the San Diego Land & Town Company of Kansas, a corporation, and Charles D. Lanning, receiver of that company, to foreclose a trust deed securing the payment of its bonds; that the trust deed was foreclosed, and the property sold to appellant herein. Pending the proceedings, James M. Sharp, appellee herein, was permitted to intervene for the purpose of protecting his rights to water from the San Diego Land & Town Company of Kansas. The circuit court rendered a decree confirming appellee's right to the perpetual use of water from the water system of appellant, and granted an injunction to prevent appellant from shutting off the water from the land owned by appellee, as it contended it had the right to do. Mandell v. Town Co. (C. C.) 89 Fed. 295. The Kansas corporation, under the constitution and laws of California, had acquired certain waters and water rights for sale and distribution, and had constructed a costly reservoir and extensive distributing system of pipes for the purpose of supplying water for irrigation and domestic uses to the inhabitants of National City and adjacent territory within the county of San Diego. A large portion of this territory was owned by the corporation. It subdivided and sold a portion of its land, and furnished purchasers thereof with water for the purposes aforesaid, through and by means of its pipe system. It also furnished water for similar purposes to the owners of neighboring lands not owned or sold by the corporation. Appellee owned 15 acres of land situate below and within 1,400 feet of one of the company's mains. On March 26, 1892, he entered into a written contract with the company, which reads as follows:

"Water Contract.

"This agreement, made by and between the San Diego Land & Town Company (a corporation), party of the first part, and J. M. Sharp, of the county of San Diego, state of California, party of the second part, witnesseth: That, for and in consideration of the payments and agreements hereinafter set forth, the party of the first part agrees to furnish to the party of the second part, subject to the general rules and regulations of the party of the first part relative to furnishing water for irrigation and other purposes which now are or shall or may be in force at any time during the existence of this contract, excepting so far as said rules and regulations may be affected and controlled by provisions of this contract. water for the irrigation of any number of acres of land, not exceeding fifteen [specifically described], for the term of five years, or any less number of years, from and after this date, at the option of the party of the second part. And, in consideration and as payment therefor, the party of the second part agrees to pay to the party of the first part, its

successors or assigns, at its office in National City, California, * * * the sum of eleven and fifty one-hundredths dollars per acre annually for each and every acre or part of an acre irrigated under this contract; provided, however, that at least seven and one-half acres must be paid for at the rate per acre above specified each and every year during the continuance of this contract. And in consideration of the furnishing to him for use upon said above mentioned and described real estate the water hereinbefore mentioned and provided for, for the period aforesaid and at the price aforesaid, the party of the second part agrees to furnish, connect, lay, and maintain in good order, at his own cost and expense, pipes of sufficient capacity and quality to conduct such water from the nearest main of the party of the first part, at such point as may be designated by the party of the first part, to said above-described tract of land, * * * during the continuance of this contract, and at the termination of this contract either to surrender and convey said connecting pipes to the party of the first part, or to remove the connection, and properly close the main of the party of the first part. And in consideration of the premises, and as a material and irrevocable part of this contract, the said party of the second part, his heirs, grantees, and assigns, hereby expressly waives and relinquishes all right and benefit under and by virtue of the provisions of section 552 of the Code of Civil Procedure of the state of California, and also hereby expressly agrees, as a contract and covenant running against said above-described real estate, that all duty, liability, and obligation of the party of the first part to furnish water for said above mentioned and described tract of land, or any part or parcel thereof, shall be governed and determined entirely by this contract, and that, at the expiration thereof, that all right, claim, and demand against the party of the first part, its successors or assigns, shall terminate and cease as absolutely as if this contract had never been executed, and said party of the first part had never furnished any water for use upon said tract of land."

At the time this contract was made the regular rates of the company for furnishing water to consumers for irrigation purposes was $3.50 an acre per annum. This rate continued up to January 1, 1896, and was then raised to $7 per acre per annum. The contract, by its terms, expired March 26, 1897, but the company supplied appellee with water up to April 9, 1897. On May 12, 1897, Sharp delivered to the company a written communication, as follows:

"I, * * * J. M. Sharp, hereby tender to you the sum of $27.25, as and for the water rents for the quarter beginning April 1, 1897, at the rate for irrigation of land demanded by your corporation. This tender is for the continuance of the water supply for said quarter for the irrigation of the following land [describing it]; and I hereby demand that the flow of water heretofore supplied from your system to said land be restored to it. * ° *"

The company and the receiver refused the said tender of money, and in reply to Sharp's communication, on May 15, 1897, among other things, said:

"We are willing to extend the contract under which you have heretofore received water, and will, so far as we are able without further increasing our system, continue to supply water for the term of two years; you to be bound in every way by the contract under which you have heretofore taken water."

Sharp declined to extend the contract, and claims that he is entitled to the continuance of the supply of water, under the constitution and laws of California, on paying the rates prescribed by law. The personal conversations had between Sharp and the agents of the water company with reference to procuring the water, in the first instance, should be considered as having reference only to the period of time expressed in the contract. Sharp com-

plied with the terms of the contract during its existence. He waived the provisions of the statute, and paid the full amount he agreed to pay for the water up to April 1, 1897, which was a few days beyond the period of time mentioned in the contract. It will be noticed that the contract does not contain any covenant or agreement between the parties as to what rate he should pay for the water after the expiration of the contract, or whether he should or should not be entitled to the water after that time. It cannot, therefore, consistently be said that Sharp acted in bad faith in endeavoring to procure the water at the regular established rates thereafter. This he had the unquestioned right to do. The fact that, at the time of the execution of the contract, he expected to procure water from other sources, and had the option, by the terms of the contract, to make such change, does not in any manner affect the legal status of the parties. He did not avail himself of this option. The objection urged, that Sharp made no regular application for the water, as required by the rules of the company, is purely technical. He did make a written demand for the water, and agreed to pay the highest uniform rate established therefor, which, under the facts in this case, should be considered as the equivalent of a regular application filled out on the company's blanks. Moreover, the written communication of the agent of the receiver was in effect a denial of his right to the water except upon rates specified in the contract.

There is a controversy between the parties as to whether or not the land of appellee is within or outside of appellant's water system or irrigation field, and also as to whether the same could be irrigated without loss to the company and detriment to other consumers, and as to whether there is sufficient water to irrigate the lands admitted to be within the system. The court below found—and there is ample evidence to sustain it—that the land of appellee is within the territory covered by the company's distributing system. The record shows, as stated by the court, that:

"Lands almost immediately adjoining the land of Sharp, and, like his, outside of National ranch, are, and have been for years, supplied with water for irrigation by the company through the same main with which it has supplied Sharp, and those lands have been, and now are being, so supplied at the company's regular established rates."

The land of appellee is upon higher ground than some of the others, and, if the supply of water diminishes, it may be that the company might not be able, if compelled to supply such land with water, to furnish others of later date, on lower ground, with a sufficient supply of water to irrigate their lands. The record does not show that appellee ever made any application for water upon his lands, or that the water was ever supplied to him, otherwise than under the terms of the contract, except as hereinbefore stated. The contention of appellant is that, under the constitution and laws of California, a water company can legally contract to supply any one owning land within its system, at a point difficult to supply water for the irrigation of such lands, for a limited time, without attaching to the land a perpetual right to the use of water thereon,

as provided for by section 552 of the Civil Code, and that this must be true in a case like the present, where the appellee at the time of making the contract expressly waived all claims that he might otherwise have to the provisions of said section. The contention of the appellee is that, after the expiration of the contract, he could not be compelled to make any extension of it as a condition precedent to having the water again turned on; that by the use of the water during the period of the contract, and for a few days thereafter, he, as one of the public, became entitled to share in the supply of water devoted by the company to the public use, upon the same terms and conditions as all other consumers under the system, without reference to any provision contained in the expired contract.

Section 552 of the Civil Code of California reads as follows:

"Whenever any corporation, organized under the laws of this state, furnishes water to irrigate lands which said corporation has sold, the right to the flow and use of said water is and shall remain a perpetual easement to the land so sold, at such rates and terms as may be established by said corporation in pursuance of law. And whenever any person who is cultivating land on the line and within the flow of any ditch owned by such corporation, has been furnished water by it with which to irrigate his land, such person shall be entitled to the continued use of said water, upon the same terms as those who have purchased their land of the corporation."

In construing this section of the Code, the court, in Merrill v. Irrigation Co., 112 Cal. 426, 435, 44 Pac. 720, said:

"The object of the statute is quite evident. Water for irrigation is, in many pursuits, essential to the productiveness of land; and if, when it has been once furnished, the company so supplying it for such purpose may at will refuse such supply, the owner of irrigated land is at the mercy of the corporation, who may ruthlessly destroy the crops of the season, or, in case of orchards and vineyards, the result of many seasons' industry, by refusing to continue the supply of water. The use being a public use, the legislature may regulate it so as to promote the interests of the public, and, at the same time, do no injustice to the water company. The defendant, having supplied plaintiff with water for irrigation, and having sufficient on hand to continue such supply, was not at liberty, without good cause, to refuse to supply her, while she, on her part, was ready and willing to pay the established price therefor."

It is unnecessary to quote the various provisions of the constitution of California, or of the statute of 1885, relied upon by appellee. It is enough to say in regard thereto that the supreme court of California, in construing the same, has uniformly held that the various provisions with reference to water and water rights for distribution and sale must be read together, and given a practical, common-sense construction, and be considered with reference to the prior state of the law, and the mischiefs intended to be remedied by the change in the organic law in relation thereto; that the use of all water theretofore or thereafter appropriated for sale, rental, or distribution is, by the constitution, expressly declared to be a public use, subject to the regulation and control of the state, subject to certain provisions in respect to the rates or compensation to be collected (which has no application to water furnished by municipalities); that the constitution expressly declares that such rates or compensation shall be fixed in a certain specified manner, at a certain time, and by a certain body; that

the right to collect the rates or compensation so established is declared to be a franchise, and cannot be exercised, except by authority and in the manner prescribed by the statute. People v. Stephens, 62 Cal. 209, 231–237; McCrary v. Beaudry, 67 Cal. 120, 7 Pac. 264; Fresno v. Irrigation Co., 98 Cal. 179, 183, 32 Pac. 943; Merrill v. Irrigation Co., supra. It necessarily follows from the principles announced in these decisions that when water from any system is designated, set apart, and devoted to purpose of sale, rental, or distribution, it is appropriated to public uses, and becomes subject to the public use declared by the constitution, without reference to the mode of its acquisition by either party. The right of appellee to the continued use of the water does not, therefore, depend upon any of the covenants expressed in the written contract, and it is wholly immaterial whether that contract was void or valid. If void for any reason, it was without force, and might have been abrogated and annulled at any time. If valid, it could only be of binding force and vitality during its life. Such is the natural construction to be given to the contract. The contract has expired. It is functus officio. All its covenants expired with it.

In Ditch Co. v. Marfell, 15 Colo. 302–307, 25 Pac. 504, the court had under consideration a contract by which the water company agreed to furnish the consumer with water, "year after year, so long as he shall pay the annual rental therefor." The court held that this provision was a mere option, which might be terminated by the consumer at the end of any year; and further held that the provision in the contract that upon failure to pay the annual rental the consumer "forfeits and relinquishes all rights and claims whatsoever, both against the said company, and in and to the use of said water from said ditch," applied only to the rights given by the contract, and did not waive the consumer's statutory right to obtain water from the company's ditch under an order of the county commissioners. In the course of the opinion the court said:

"We deem it unnecessary to consider in the present opinion the question of public policy argued in this connection by counsel for appellees. Whether appellees could, by contract, forever relinquish rights relating to water, conferred upon them by the constitution and statutes, we need not determine. The instrument itself, in our judgment, does not indicate any such intent. It contains no declaration that, upon a failure to accept the annual proposition and make the annual contract, the consumer abandons all right to obtain in any manner water from the carrier's canal. In the absence of an express declaration or clear implication to the effect that such omission or failure should produce a forfeiture of constitutional and statutory rights existing, collateral to those provided for in the agreement, such collateral rights would in any event, unquestionably, remain undisturbed. The simple and obvious meaning of the provision is that the 'rights and claims' intended to be forfeited are those mentioned by the instrument itself, viz. the consideration advanced, and the privileges therein expressly enumerated."

From the facts contained in the record, it is manifest that appellee had acquired a public use to the water necessary to irrigate his lands, and he was and is entitled to avail himself of the privileges and rights guarantied to him by the constitution, laws, and decisions of the courts of the state of California. The company

was not justified in shutting off the water, or in demanding from appellee a renewal of the former contract as a condition precedent to his right to a continued use of the water upon paying the legal rate fixed for supplying it. The fact that the lands of appellee are upon a higher level than other lands supplied by the company cannot be urged as a reason for not supplying water to him unless he pays a higher rate than others taking water from the same system. We agree with the views expressed by the circuit court, that:

"A consumer whose land is situated within the flow of such a distributing system as that of this company, and who has, by means of water thereby supplied to him, made valuable improvements on his land, cannot be thereafter lawfully deprived of such water, in order that the distributer may supply later comers, ever though a larger area, by reason of more favorable conditions, may thus be brought under cultivation. Such a rule would manifestly work destruction to the just and well-established rule that in cases like this the first in time is the first in right."

The decree of the circuit court is affirmed, with costs.