(77 South. 565)

**BIRMINGHAM RY., LIGHT & POWER CO. v. LITTLETON.    (6 Div. 534.)**

(Supreme Court of Alabama. May 10, 1917. On Rehearing, Dec. 20, 1917.)

1. ELECTRICITY ☞11—PUBLIC SERVICE CORPORATIONS—DUTY TO FURNISH SERVICE.

It is the duty of a company duly chartered to furnish electric current for domestic consumption, within a reasonable time after due application and compliance with its reasonable regulations, to extend its lines and furnish service, failing which it is liable to the applicant for the proximate pecuniary loss thereby caused.

2. ELECTRICITY ☞11—PUBLIC SERVICE CORPORATIONS—DUTY TO FURNISH SERVICE.

If an electric service company after due application and compliance with regulations fails to extend lines and render service, the prospec-

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

tive customer is entitled to have considered as an element of damage the inconvenience and annoyance to which he was subjected by being denied the service.

**3. EVIDENCE ⬦⟹334(3) — OFFICIAL CERTIFICATE—FURNISHING CURRENT.**

In action by an applicant for electric service for a company's failure to extend lines, certificate of city electrician was competent evidence to show that plaintiff had complied with his obligation to make ready his premises for the use of electricity.

**4. APPEAL AND ERROR ⬦⟹1053(3)—HARMLESS ERROR—EVIDENCE—CURE BY INSTRUCTIONS.**

In an action for failure to furnish electric service, the court having instructed the jury that there could be no recovery for loss of time in trying to get the installation consummated, no reversal should be had for the admission of evidence, against the objection of defendant, tending to prove that plaintiff had lost three days' time in the effort to get the light installed.

**5. ELECTRICITY ⬦⟹11—FAILURE TO FURNISH SERVICE—DAMAGES—ELEMENTS.**

Applicant for electric service to whom service was denied may recover cost of wiring his dwelling for reception of the current.

**6. ELECTRICITY ⬦⟹11—CONTRACT FOR SERVICE—QUESTIONS FOR JURY—RESCISSION.**

Whether a contract between plaintiff and defendant by which defendant agreed to furnish electric service was rescinded, held for the jury.

**7. TRIAL ⬦⟹260(1)—INSTRUCTIONS—DUPLICATION.**

Where the court gave defendant's requested written instruction, it is not error to refuse subsequent written instructions to the same effect.

**8. ELECTRICITY ⬦⟹11—CONTRACT FOR SERVICE—QUESTIONS FOR JURY.**

Whether there was a valid existing contract by which defendant agreed to furnish electric current to plaintiff, held for the jury.

### On Rehearing.

**9. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT.**

Public service corporations are obliged to treat all members of the public which they hold themselves out as serving fairly and without discrimination.

**10. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT.**

The duty of public service corporation to serve public fairly and without discrimination exists independent of statute.

**11. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT.**

The duty of public service corporation to serve fairly and without discrimination arises independent of contract with municipality or with the individual.

**12. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT.**

An electric power and light company is not bound to furnish current to an applicant in the absence of performance by him of conditions precedent which it may establish, such as tendering prepayment for service.

**13. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT.**

To entitle an applicant to receive electric current from a public service corporation he must ask service at a proper time and place, in proper form and in proper manner.

**14. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT—ACTION.**

In an action against a public service company for failure to serve an applicant entitled to service, it is necessary to allege that the defendant was engaged in the discharge of a public

service; that the plaintiff came within the class of people whom the defendant was bound to serve; that the plaintiff had performed all reasonable conditions precedent entitling him to that service; that the defendant wrongly refused to furnish the services; and that the plaintiff had thereby been damaged.

**15. ELECTRICITY ⬦⟹11 — DUTY TO FURNISH CURRENT—ACTION.**

Complaint of applicant for electric service to whom it was denied, alleging that defendant was under contract with plaintiff to furnish electricity, and that plaintiff has complied with all the terms thereof, is insufficient, the obligation not necessarily arising out of contract, so that plaintiff should have alleged demand and performance on his part.

**16. PLEADING ⬦⟹214(2)—DEMURRER—EFFECT.**

A demurrer to a bill or complaint or other pleading confesses those matters of fact which are well pleaded.

**17. PLEADING ⬦⟹8(7) — CONCLUSIONS—CONTRACTS.**

In action on contract, facts showing defendant's obligation must ordinarily be alleged.

**18. PLEADING ⬦⟹35—CONCLUSIONS OF FACT.**

When an allegation amounts to a conclusion of law it may be treated as surplusage.

**19. NEGLIGENCE ⬦⟹108(2)—CONCLUSIONS OF FACT.**

While mere allegation that one wantonly injured another is sufficient, if the pleader follows this conclusion of fact with a statement of the facts, his pleading will be tested by the facts averred.

**20. CONTRACTS ⬦⟹334—ACTIONS—CONSIDERATION—PLEADING.**

As a general rule, in the absence of statutory enactments to the contrary in actions on contract, it is necessary to allege a consideration, but since the statute declares that any contract in writing imports consideration, it need not be alleged.

**21. ACTION ⬦⟹1 — CAUSE OF ACTION — WHAT CONSTITUTES.**

A cause of action is made up of a duty and a breach thereof.

**22. PLEADING ⬦⟹8(8)—CONCLUSIONS—DUTY.**

The existence of a duty must be shown by facts alleged in the declaration, and though the breach of the duty may be averred by way of conclusion, the existence of the duty may not be so alleged.

**23. PLEADING ⬦⟹8(7) — CONCLUSIONS—CONTRACT.**

In a count for breach of a contract to furnish plaintiff electricity at his residence, the averment that defendant was then and there under contract with plaintiff to furnish the plaintiff electricity was a legal conclusion, and added nothing to the complaint.

**24. ELECTRICITY ⬦⟹11—ACTIONS—PLEADING.**

In an action for failure to furnish electricity as provided by contract, a complaint failing to aver that the contract was in writing, or that it was executed on plaintiff's part, is subject to demurrer on the ground that it states no consideration.

Sayre and Gardner, JJ., dissenting on rehearing. Somerville, J., dissenting in part.

Appeal from City Court of Bessemer; J. C. B. Gwin, Judge.

Action by A. J. Littleton against the Birmingham Railway, Light & Power Company Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under Act April 18, 1911 (Acts 1911, p.

---

449) § 6. Affirmed. On application for rehearing. Application granted.

Huey & Welch, of Bessemer, and Tillman, Bradley & Morrow, of Birmingham, for appellant. Goodwyn & Ross, of Bessemer, for appellee.

THOMAS, J. In the instant case the trial was had on count 1, in which it was averred that defendant contracted with plaintiff to furnish electric current to the latter's residence, No. 1431 Dartmouth avenue, in the city of Bessemer. The count was not subject to the demurrer directed thereto. It was averred by way of implication, as a consideration, that the defendant, for a reward, was furnishing to the public electricity for the purposes of lighting and heating, and that under contract it engaged to furnish plaintiff at his residence such current for lighting.

The action being for a breach of the contract—and not in assumpsit or for the breach of a duty growing out of a contract—the cases of Newton v. Brook, 134 Ala. 269, 32 South. 722, Spencer v. Bessemer Water Works, 144 Ala. 587, 39 South. 91, Malone-Beal Co. v. Greer, 169 Ala. 534, 53 South. 810, and B. R. L. & P. Co. v. Abbott, 6 Ala. App. 643, 60 South. 970, have no application. The averment was not that the defendant promised and undertook to furnish the current. If it had been, then, under the foregoing authorities, it would have been necessary to specifically aver the consideration for the undertaking. The averment was that defendant contracted with plaintiff to furnish electric current at his residence, and that it failed to deliver the same as per contract. If the suit had been ex delicto for the breach of a duty growing out of the contract, it would have been necessary to aver the consideration. The distinction between actions ex contractu and actions ex delicto is clearly pointed out in Wilkinson v. Moseley, 18 Ala. 288, and it has since been adhered to by our court. Tucker v. Mobile Infirmary, etc., 191 Ala. 572, 575, 68 South. 4, L. R. A. 1915D, 1167.

Defendant pleaded in short by consent the general issue, with leave to give in evidence any matter which would be "admissible in evidence if well and properly pleaded."

The trial court submitted to the jury two elements of recoverable damages: (1) Inconvenience to plaintiff in the use of his residence, because of defendant's failure to furnish electric current; (2) the expense plaintiff incurred in "wiring" his residence for the reception of such current.

The evidence tended to show that at the time in question the defendant, a public service corporation, was engaged in furnishing to private consumers in the municipality of Bessemer, for a reward, electric current for light and heat, under the reasonable rules and conditions of the company and in consonance with law; that plaintiff's residence which was sought to be lighted was located within the corporate limits of Bessemer and within the service radius of defendant; that plaintiff (through his wife) made application in writing to defendant for electric current to be furnished for said residence, and made the required cash deposit as per the terms of the application prescribed by defendant. Said application for electric current contained, among other stipulations, the following:

"The company shall deliver electricity at a point outside of the premises designated by the company's representatives. All wiring from the point so designated, all interior wiring and all electric equipment on the premises shall be at consumer's expense, and all electric equipment (including wiring), or any changes therein, shall at all times meet the requirements of the city authorities or the Southeastern Underwriters' Association, and the company may cut off the current supply, without notice, at any time such wiring does not meet such requirements. All electrical equipment on the premises shall be furnished by and at the consumer's expense, and the company shall not be liable for damage to person or property due to the installation, maintenance, or operation of any electrical equipment on the premises, other than damages occasioned by the company's willful neglect or default. Nothing herein contained is a guaranty by the company of a constant supply of electricity, and the company shall not be liable in any way to the consumer for interruption in service. * * * The commencement of service by the company at the premises shall be an acceptance by the company of this application, which shall thereupon become a contract between the company and the consumer. Either party may terminate such contract on three (3) days' notice to the other party, given as hereinafter provided. * * * No promise, agreement, or representations of any agent or employé of the company shall bind the company unless expressly incorporated herein."

After the application was made, investigation by defendant's agent revealed the fact that an extension of the service wires was necessary in order to reach plaintiff's premises. A diagram (made a part of the record) showed that defendant's nearest line, or service pole supporting the same, was 115 feet distant from plaintiff's residence, which residence was located on the corner of Dartmouth avenue and Fifteenth street, and that defendant's line and service poles extended from Sixteenth street west to within 115 feet of Fifteenth street.

For the defendant, the witness Stone explained the relative location of plaintiff's residence and the necessary extension of the service as follows:

"I made the diagram, it is correct. * * * The nearest pole to Mr. A. J. Littleton's house is 115 feet. * * * Mr. Littleton's house is right down in the corner" of Dartmouth avenue and Fifteenth street. "The distances there are in proportion, about four poles to a block and all about the same distance."

The distance over which the secondary wire was to be extended was 115 feet. in direction due west from the last of the three service poles then standing along the north

side of the alley or street, and from Sixteenth to Fifteenth street.

Defendant's evidence tended to show further that after plaintiff applied for electric current defendant sent a Mr. Leopard to make the connection; that he found insufficient pole line (as above indicated) with which to reach the house with the service, and reported the fact to the office, and that thereafter the company sent him "to explain to Mrs. Littleton what the trouble was." Witness said:

"I told her we could not reach her from where the pole was at the present time; that there would have to be some arrangements made to set some poles in there to where we could reach her, and if she wanted to come down and make that arrangement with the company to handle it. it was all right, and if she didn't, we would return her deposit she made for the meter. She decided to take the money, and I gave the money to her and she signed a petty cash voucher for it, and I returned it to the office."

That application for the service was first made on December 9th, and the money returned to Mrs. Littleton on the next day. That Mr. Littleton came to defendant's office on the 14th of December, and "wanted to know if we [the defendant] were going to furnish the service" applied for to his residence. On December 16th, the request was made by defendant to its construction department for estimate and authority to place the necessary pole, and make the extension of the secondary wire to connect with plaintiff's residence. In response the requested estimate was completed, and approval by that department was given on December 23, 1915.

The evidence was to the further effect that plaintiff made demand on defendant for immediate service on December 15, 1915, offering to repay therefor the meter fee theretofore returned by defendant's agent to plaintiff's wife, which offer was declined by defendant, because coupled with the demand by plaintiff for immediate service. Thereafter, and before Christmas, plaintiff employed counsel, who communicated with defendant immediately as to its failure to furnish the electric current applied for to said residence.

Defendant's evidence further tended to show that it notified plaintiff and his counsel of its willingness and readiness to install the service line and furnish the current. However, this was not done, or had not been done at the date of the trial, which was March 30, 1916. Suit was brought on January 31, 1916.

It was without dispute that about half a day would be required to go out from Birmingham and place the necessary pole whereon to extend the required service wires.

[1, 2] Under the circumstances of the case, it was defendant's corporate duty, within a reasonable time after plaintiff's due application and compliance with its reasonable regulations in that behalf, to extend its lines and comply with the application. Failing in this duty or contract obligation, defendant was liable to such purchaser, or prospective purchaser, of current, for the proximate pecuniary loss caused by such failure, and, in addition thereto and in connection therewith, the jury were authorized to consider, as an element of recoverable damages, the inconvenience and annoyance to which plaintiff was subjected by being denied, or deprived of, such current, within the terms of the contract. Birmingham Waterworks Co. v. Ferguson, 164 Ala. 494, 51 South. 150; Birmingham Waterworks Co. v. Watley, 192 Ala. 520, 68 South. 330; N., C. & St. L. Ry. v. Yarbrough, 194 Ala. 163, 69 South. 582. That is to say, the failure to furnish current to plaintiff's residence was a physical inconvenience and annoyance flowing immediately from the breach of the contract, if a contract existed, within the contemplation of the parties as a probable and proximate result of its breach, which, when coupled with proof of pecuniary loss, formed an item of recoverable damage. Central of Georgia Railway Co. v. Sanders, 9 Ala. App. 632, 636, 64 South. 190. Under the evidence, no error was committed in the refusal of the requested charges to the effect that annoyance was not an element of recoverable damage.

[3] The certificate of the city electrician was competent evidence, tending to show that plaintiff had complied with the contract obligation exacted by defendant to make ready his premises for the reception of the current in order that defendant might not be subjected to expense or responsibility on that account.

[4] The court having instructed the jury that there could be no recovery for loss of time in trying to get the installation consummated, no reversal should be had for the admission of evidence, against the objection of defendant, tending to prove that plaintiff had lost three days' time in the effort to get the light installed. This element of damage was eliminated by the general charge of the court.

[5] The cost of wiring plaintiff's dwelling for reception of the current was a pecuniary loss, if, when ready, he was denied the supply by defendant's failure to discharge its contract. There was no error in that part of the oral charge excepted to, nor in the refusal of defendant's written charge No. 3.

[6] Under the evidence the question of rescission was for the jury, and no error was committed by the trial court in the refusing of charges on this point that invaded the province of the jury. So the several affirmative charges requested by defendant were properly refused.

[7] At defendant's request the court instructed the jury in writing that if there was a contract between plaintiff and defendant for electric current, then, after plain-

tiff's demand for the service and his compliance with the reasonable requirements of him, the defendant had a reasonable time within which to extend its equipment or service lines in order to furnish such service, and no error was committed in refusing the several subsequent written charges to the same effect, requested by defendant.

[8] Under the evidence touching the negotiations between the parties for the current, the question of the existence vel non of a contract was one for the jury. If such a contract was found to have existed and continued to exist, then what was a reasonable time which defendant should have been allowed to connect plaintiff's dwelling with its system was a question likewise for the jury.

We have examined the refused charges in connection with the court's oral charge and the charges given at defendant's request, and find that the law of the case was fully and fairly submitted to the jury.

The motion for a new trial was properly denied. Nashville, Chattanooga & St. Louis Railway v. Crosby, 194 Ala. 338, 70 South. 7. The judgment of the city court is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

### On Rehearing.

THOMAS, J. The trial was had on count 1, in which it was alleged in substance that "the defendant was a public service corporation' and as such was engaged in furnishing for a reward electricity for lighting and heating purposes to the public in the city of Bessemer, a municipal corporation," and that defendant "was then and there operating as such public service corporation under a franchise" from said city. It was further alleged that defendant "was then and there under a contract with the plaintiff to furnish to plaintiff electricity on plaintiff's premises at his residence"; that "although he [plaintiff] has complied with all of his terms of said contract, the defendant has breached said contract" by its failure to "furnish said electricity to plaintiff on his said premises, as it was the defendant's duty to do under said contract"; and that, as a proximate consequence of said breach of said contract, defendant was greatly damaged and inconvenienced.

Defendant demurred, on the grounds "that it does not aver sufficient facts to show a duty on defendant to extend its service feed wires to plaintiff's residence so that defendant could supply plaintiff with the service desired," and that "no sufficient consideration for the obligation of the defendant was averred."

[9] One of the questions raised by the demurrer is whether an action on the case is shown to lie against a public service corpora-

201 ALA.—10

tion furnishing, for a reward, in a given community, under a franchise from the city, electricity for lighting and heating purposes, for the refusal to furnish electricity to the plaintiff, a resident of that city, where no special contract between the plaintiff and the defendant corporation is alleged, and there is no allegation of tender, nor that the plaintiff was willing and ready to tender the ordinary charges for such services.

During the first part of the nineteenth century all businesses, with the exception of callings such as those of common carriers and innkeepers, were free from public control. Even though the business was affected with a public interest, those engaged therein were not obliged to serve all the public without discrimination, and might arbitrarily refuse service without assigning reasons. Wyman on Public Service Corporations, § 29. As enterprises developed and monopolies extended their influence, the advantages of combination became more apparent, and there arose a corresponding necessity for controlling the institutions which supplanted the former individual trader. It can no longer be questioned that public service corporations or companies are obliged to treat all members of the public that it has held itself out as serving fairly and without discrimination. Daughdrill v. Alabama Life Insurance & Trust Co., 31 Ala. 91; 13 M. A. L. 3, 12.

[10, 11] This duty to serve the public exists independent of statutes regulating the manner in which public service corporations or companies shall do business. It is imposed upon the public service corporation because it is organized to do a business affected with a public interest, and because the corporation has held itself out to the public as being willing to serve all members thereof. Birmingham Waterworks Co. v. Brown, 191 Ala. 457, 67 South. 613, L. R. A. 1915D, 1086; Snell v. Clinton Electric Light Co., 196 Ill. 626, 63 N. E. 1082, 58 L. R. A. 284, 89 Am. St. Rep. 341; Capital City Light & Fuel Co. v. Tallahassee, 186 U. S. 401, 22 Sup. Ct. 866, 46 L. Ed. 1219; Gibbs v. Gas. Co., 130 U. S. 396, 9 Sup. Ct. 553, 32 L. Ed. 979. This obligation to serve the public also arises independent of contract with the municipality in the shape of a franchise, or of a contract with the individual. Bessemer Waterworks Co. v. City of Bessemer, 73 South. 905.[1] Frequently, it is "indispensable to the public service corporation to use the streets, and it is sometimes said that the duty to serve arises from this right. However, the right to use the streets is granted as an incident of the public nature of the service which the public service corporation performs, and it cannot therefore be said that the duty to serve the public arises from the privilege of using the street. Neither does this public duty arise from a private contract with an individual." It exists independent of contract. "The law cannot com-

[1] 198 Ala. 535.

pel any individual to serve another; but it does make it clear that any one who undertakes a public employment is thereby committed to the performance of that service in the way which the law says that conditions demand for the protection of the public." "This duty, placed upon every one exercising a public calling, is primarily a duty to serve every man who is a member of the public needing that service. Implicit is this primary duty; necessarily involved in its full performance are various requirements. Not only must all be served, they must have adequate service; not only must they not be charged extortionate rates, but there must be no discrimination practiced. In such an elaborated statement there is not more than the plain recital of the present recognition of different aspects of public duty. But it will be noticed that the duty to serve the public is the fundamental principle from which the all rules of public service may be derived." 13 M. A. L. 22; Cooley's Const. Lim. (6th Ed.) p. 651, and cases cited; Angel & Ames on Corp. 13; State v. Consumers' Gas Trust Co., 157 Ind. 345, 352, 61 N. E. 674, 55 L. R. A. 245; Freeman v. Macon Gas Light & Water Co., 126 Ga. 843, 56 S. E. 61, 7 L. R. A. (N. S.) 917; State ex rel. Weatherly v. Birmingham Waterworks Co., 185 Ala. 388, 403, 64 South. 23, Ann. Cas. 1916B, 166; City of Montgomery v. Greene, 180 Ala. 322, 60 South. 900; City of Mobile v. Bienville Co., 130 Ala. 384, 30 South. 445.

[12] There are, however, many conditions precedent to the obligation of any public service corporation or company to serve any particular applicant. As Mr. Wyman says:

"There is no obligation to render service to a particular applicant until he puts himself in a proper position to demand that service. It is the law again which determines under what conditions the service company may properly be held to respond to an application. In most services the law has made it plain what conditions there are as to time and place, method and manner. All these conditions must be performed by the particular applicant, though he be of the class to which the duty pertains, before a present duty is owed him, even though he wishes a service in respect to which there has been public profession of a general sort. Undoubtedly the most noteworthy example of these conditions which must be performed is the necessity of an offer of prepayment before any service will be due. Stated technically, the company rendering the service is therefore not in default until performance of the conditions precedent has been tendered. What conditions are thus insisted upon depend upon how the law has thought proper to safeguard all concerned." 13 M. A. L. 33, 37.

[13] Service must be asked at a proper time, at a proper place, in proper form, and in a proper manner. That is to say, the applicant must submit to such reasonable conditions as the public service company sees fit to impose. City of Montgomery v. Greene, 180 Ala. 322, 60 South. 900; Bessemer Waterworks Co. v. City of Bessemer, 73 South. 905;[2] Pullman Car Co. v. Krauss, 145 Ala. 395, 40 South. 398, 4 L. R. A. (N. S.)

[2] 198 Ala. 535.

103, 8 Ann. Cas. 218; Watauga Water Co. v. Wolfe, 99 Tenn. 429, 41 S. W. 1060, 63 Am. St. Rep. 841; Shepard v. Milwaukee Gaslight Co., 6 Wis. 539, 70 Am. Dec. 479; Illinois Cent. Ry. Co. v. Smith, 85 Miss. 349, 37 South. 643, 70 L. R. A. 642; 4 Elliott on Railroads, §§ 1574–1576; 2 Hutchinson on Carriers, §§ 964, 966. It has been questioned, in another jurisdiction, whether a public service corporation or company can require the applicant to enter into a contract at all, the applicant having the inherent right to the service irrespective of contract. San Diego L. & T. Co. v. Sharp, 97 Fed. 394, 38 C. C. A. 220; Wyman on Pub. Serv. Corp. c. 4, § 330 et seq. However this may be where the element of public service exists, and the applicant has complied with all reasonable conditions precedent, the public service corporation or company cannot lawfully refuse to serve the applicant. For such refusal subjects it to an action for damages. Pittsburgh, C. & St. L. Ry. Co. v. Morton, 61 Ind. 539, 28 Am. Rep. 682; Saltonstall v. Stockton, Taney, 11, Fed. Cas. No. 12,271; Wyman on Pub. Serv. Corp. § 335; Coy v. Indiana Gas Co., 146 Ind. 655, 46 N. E. 17, 36 L. R. A. 535.

It is necessary to consider what would be the proper action against a public service corporation for refusal or failure to serve an applicant entitled to service, and what the complaint should allege. Analogies have been drawn from the common-law action against a common carrier for failure to carry goods or passengers, or against an innkeeper for failure to receive a guest. An action on the case was brought, alleging that:

"The defendant was a common carrier of goods for hire from A. to B., and that the plaintiff tendered at the defendant's place of business at a proper time certain goods of the plaintiff's to be carried by the defendant, for reward, from A. to B., and was then ready and willing and offered to pay the defendant the proper reward in that behalf; yet the defendant, although he had means of carrying said goods, would not receive and carry the same." 2 Chitty, 488, and note; Pickford v. Grand Junction Railway Company, 8 Meeson & Welsby's Exchequer Rep. 372.

As to innkeepers, see 2 Chitty, 531; Fell v. Knight, 8 Meeson & Welsby, 269.

Mr. Chitty, on this point, observes:

"With regard to nonfeasance, or neglect to perform a contract, not even an action of assumpsit, much less an action upon the case, can be maintained, if no consideration existed and be stated in the declaration to give validity to the defendant's alleged obligation to do the act. Hyde v. Moffat, 16 Vt. 271. Therefore a count stating that the plaintiff retained the defendant, who was a carpenter, to repair a house by a given day, and the defendant accepted the retainer but did not perform the work, per quod the walls were injured, cannot be supported. Elsee v. Gatward, 5 T. R. 143. Where the count shows no consideration, no legal liability on the part of the defendant to proceed with the work exists. There are, however, particular instances of persons exercising certain public trades by employment, who are

bound by law to do what is required of them in the course of their employment, without an expressed contract, and are in turn entitled to a recompense, and may therefore be sued in case, as for a breach of duty in refusing to exercise their calling." 1 Chitty's Pl. (16th Ed.) 152, 153 (196, 197).

[14] We deduce from the foregoing authorities that, in an action against a public service company for failure to serve an applicant entitled to service, it is necessary to allege: (1) That the defendant was engaged in the discharge of a public service; (2) that the plaintiff came within the class of people whom the defendant was bound to serve; (3) that the plaintiff had performed all reasonable conditions precedent entitling him to that service; (4) that the defendant wrongly refused to furnish the services; and (5) that the plaintiff had thereby been damaged.

[15] Applying these principles to the complaint in the instant case, the requirement of an allegation of performance of conditions precedent is not present, though the complaint contains allegations that "the defendant was then and there under contract with the plaintiff to furnish to the plaintiff electricity on the plaintiff's premises at his residence at No. 1431 Dartmouth avenue, in said city of Bessemer," and that the plaintiff "has complied with all the terms of the contract." As indicated, the defendant's obligation does not necessarily arise out of contract. For if the duty to serve plaintiff did not arise out of contract, but out of its general status and relation as a public service corporation formed to serve the individuals of the municipality or community of Bessemer, and plaintiff as an individual of that community was entitled to service, the complaint should allege facts showing that demand for service was made by plaintiff, and showing the performance by him of all reasonable conditions precedent, such as the making of tender, or standing ready and willing to tender, the consideration for the service, the making ready of his premises for the reception of the electric current, etc. For failure of averment in these respects, the complaint is defective.

The case of Newton v. Brook, 134 Ala. 269, 32 South. 722, is not strictly applicable. That was an action of trespass on the case, not against a public service corporation, but against a private individual for an alleged breach of duty in failing to perform the defendant's promise, without alleging any consideration therefor. For this reason, on demurrer, the count was held defective. The court said that if the duty is based on contract it must appear in the complaint that the contract was valid, and hence the consideration therefor must be expressly alleged. It is intimated in the opinion (134 Ala. top of page 273, 32 South. 723) that the result might have been different if the duty arose from a general obligation of law, as follows:

"It is clear under the allegations of the complaint that the defendants were under no duty to perform the obligation, out of which their duty is alleged to have arisen, independent of a contract. In other words, no such duty, the breach of which is complained of, originated either in a general obligation of law or in an obligation thrown upon them by reason of their vocation. So then, if the duty of performance was upon them at all, it must have been imposed by contract. This being true, the contract must be a binding one upon them and this must be shown by the allegations of the complaint. To this end it is just as important to state expressly the consideration for defendants' promise as if the action were in assumpsit."

The case of Malone-Beal Co. v. Greer, 169 Ala. 543, 53 South. 810, cannot control, it being a suit upon an ordinary contract, and no public duty being involved. The plaintiff failed to aver the full consideration of the defendant's promise, and on the principle that the proof must correspond with the allegation it was held that a recovery could not be had because of a variance.

The case of McGowin Lumber & Export Co. v. R. J. & B. F. Camp Lumber Co., 192 Ala. 35, 68 South. 263, reaffirmed the familiar proposition that it is necessary to have an acceptance of the offer, before the party to whom the offer is made can be contractually bound.

The case of Spencer v. Bessemer Water Works, 144 Ala. 587, 595, 39 South. 91, is in point. That was an action on the case, against a public service corporation, for failure to furnish water. The holding was that it was not sufficient to allege in the complaint that the defendant was a public service company authorized to furnish water to the citizens of the town, and that the defendant had the exclusive right to furnish water to the citizens, and that the citizens had no other source of supply than defendant's waterworks, and that defendant was under contract with plaintiff to supply plaintiff with water, or that the defendant was in the business of furnishing water for a reward. It was pointed out that there was no allegation that the plaintiff had performed all the conditions precedent entitling him to the service. Obviously the court had this in mind when it said:

"Non constat, the refusal or failure to supply the water was due to plaintiff's failure to perform his allegations."

Had the plaintiff in the Spencer Case, alleged facts showing that all conditions precedent had been performed by him, the court would have arrived at an opposite conclusion to that expressed in the observation:

"No consideration for the contract is here alleged. Newton v. Brook, 134 Ala. 269 [32 South. 722]. But if it be said that the count shows a partial performance by defendant of the contract alleged, and therefore no consideration for it need be averred, it is not shown, except perhaps inferentially, that it was bind-

ing upon the parties at the time defendant failed or refused to furnish the water."

[16-18] It remains to inquire if the complaint be sufficient as an action for the breach of a contract to furnish plaintiff with electric current for residential purposes. In disposing of the ground of demurrer that "no sufficient consideration for the obligation of defendant averred therein is set out in said count," we must determine whether the allegations, "the defendant was then and there under contract with plaintiff to furnish to the plaintiff electricity on the plaintiff's premises at his residence at 1431 Dartmouth avenue, in the said city of Bessemer," and "although he [the plaintiff] has complied with all of his terms of said contract," etc., "the defendant has breached said contract and failed to furnish electricity as it was its duty to do under said contract," are mere legal conclusions, and do not aid the complaint. A demurrer to a bill or complaint or other pleading confesses those matters of fact which are well pleaded (Barnett v. Central Co., 130 Ala. 294, 30 South. 347; McCreery v. Berney National Bank, 116 Ala. 224, 22 South. 577, 67 Am. St. Rep. 105; Sheffield Co. v. Rand, 83 Ala. 294, 3 South. 686; Sloss-Sheffield Co. v. Smith, 166 Ala. 437, 447, 448, 52 South. 38; Will's Gould on Pleading, pp. 305, 307, and notes); facts showing the duty to protect or to serve must ordinarily be alleged (Long v. Addix et al., 184 Ala. 236, 63 South. 982; Dwight Mfg. Co. v. Holmes, 73 South. 933 [3]), and when an allegation amounts to a conclusion of law it may be treated as superfluous. 31 Cyc. 49-51; 12 Ency. Pl. & Pr. 1020 et seq.

Of the distinction between conclusions of law and conclusions of fact, the Supreme Court of Minnesota (Curtiss v. Livingston, 36 Minn. 380, 381, 31 N. W. 357, 358) has declared:

"It is urged that the clause we have quoted from the complaint is a statement of a conclusion of law, and not an allegation of fact. [That clause was that the defendant, after the execution and delivery of the lease to the lands in question, 'succeeded to and became possessed of' the interest of the grantors thereof.] It is, for the purpose of pleading, rather a statement of an ultimate fact, or a conclusion of fact, based on or arrived at by several minor facts, and the rules of law applicable to them. This, to avoid prolixity, is sometimes not only permissible, but necessary, in pleading. Thus in ejectment, it is sufficient for plaintiff to allege that he is the owner and entitled to the possession, and that the land is wrongfully withheld, without alleging in detail the particular facts on which his claim of title is based, McClane v. White, 5 Minn. 178 [Gil. 139]; Wells v. Masterson, 6 Minn. 566 [Gil. 401]; Buckholz v. Grant, 15 Minn. 406 [Gil. 329]; also that a mortgage was 'duly foreclosed,' without alleging particulars, Pinney v. Fridley, 9 Minn. 34 [Gil. 23]; also, in an action to enforce a lien for taxes passing under the statute to a purchaser at a void tax sale, that the taxes were 'duly levied and assessed.' Webb v. Bidwell, 15 Minn. 479 [Gil. 394]. So an allegation that a party 'conveyed,' or that he 'contracted' or 'agreed,' without detailing the particular acts which it is claimed resulted as a

conveyance, contract, or agreement, must usually be sufficient in pleading. Where the allegation is so indefinite that the opposite party may not be apprised of what is claimed, the court may, perhaps, on a motion to make more definite and certain, require a more full and detailed statement; but, as against a demurrer, a general allegation of an ultimate fact or conclusion of fact is sufficient."

The New York court (Spies v. Munroe, 35 App. Div. 527, 54 N. Y. Supp. 916) held that an allegation in an answer that, after discovery, and with "full knowledge of all the facts" relating to the averred transaction, the plaintiff "confirmed the payment" to defendant and elected to consider it valid, etc., was not the statement of a legal conclusion. The court said:

"In an affidavit, the evidence establishing a fact, and not a conclusion of fact drawn from the evidence, must be set forth, while a pleading need contain simply a statement of fact, and not the evidence to establish it. This distinction was pointed out by the presiding justice of this court, while sitting in the late general term, in Westervelt v. Agrumaria Sicula, Societa Anonima di Transporti Marittimi, 58 Hun, 147, 11 N. Y. Supp. 340. He said: 'It is the office of the complaint to allege conclusions of fact adduced from evidence, whereas it is the office of the affidavit to set out the evidence establishing this conclusion of fact.'"

The following averments in a pleading have been held to be a sufficient allegation of fact: That an election was duly and legally held (People ex rel. Crane v. Ryder, 12 N. Y. 433); that a note was duly indorsed by an officer duly authorized (Nelson v. Eaton, 26 N. Y. 410); that a corporation was duly organized (Lorillard v. Clyde, 86 N. Y. 384); that the defendant was not the true owner and was not seised of the premises in fee (Woolley v. Newcombe, 87 N. Y. 605).

[19] It is a familiar rule in this court that a mere allegation that one wantonly injured another is sufficient. If, however, the pleader follows this conclusion of fact with a statement of the facts upon which the conclusion is based, his pleading will be tested by the facts averred. Dwight Mfg. Co. v. Holmes, 73 South. 933.[3] When thus considered, the decision in the case of McGowin Co. v. Camp Lumber Co., supra, squares with the Code form for complaints in actions on contracts.

[20] The general statement of the rule is that, in the absence of statutory enactments to the contrary, in actions upon contract it is necessary to allege a consideration (Moore v. Waddle, 34 Cal. 145; McFadden v. Crawford, 39 Cal. 662; Hendrick v. Seely, 6 Conn. 176; Higham v. Harris, 108 Ind. 246, 8 N. E. 255; Decker v. Birhap, Morris [Iowa] 62; Beauchamp v. Bosworth, 3 Bibb [Ky.] 115; Harris v. Rayner, 8 Pick. [Mass.] 541; Hemmenway v. Hickes, 4 Pick. [Mass.] 496; Will's Gould on Pl. pp. 230, 231; 4 Ency. Pl. & Pr. 928; 9 Cyc. 717), except in cases of contracts under seal, bills of exchange, and negotiable promissory notes; such written instruments by intendment of law im-

[3] 198 Ala. 590.

porting a consideration. In this jurisdiction the statute declares that any contract in writing imports a consideration; in suits thereon it is not necessary to aver the consideration. Click v. McAfee, 7 Port. 62; Phillips v. Scoggins, 1 Stew. & P. 28; Chamberlain v. Darrington, 4 Port. 515; Nesbit v. Bradford, 6 Ala. 746; Holman v. Norfolk Bank, 12 Ala. 369; Thompson v. Hall, 16 Ala. 204; Bolling v. Munchus, 65 Ala. 558; Georgia Co. v. Boykin, 137 Ala. 350, 367, 34 South. 1012; Code, § 3966.

However, in an early case, this court said: "One of the distinctions between case and assumpsit is that if the former action be brought on a breach or omission of duty growing out of a contract, the contract itself need not be formally stated in the declaration (1 Ch. Pl. 124, 335), unless it constitutes a material part of the plaintiff's case. Bevan v. Jones, 6 D. & B. 483. Here the cause of action, as stated in the first count, is not on the contract of hiring, but for an omission of duty, in not treating the slave with proper care while she was hired. The terms of the contract were entirely unnecessary, and whether the slave was hired until Christmas, or until the first of January, could not affect the plaintiff's right to recover, if during the time she was hired the defendant let her die for want of attention. Staddart v. Palmer, 3 B. & C. 2. The same rule holds as to the statement of the consideration of the contract." Moseley v. Wilkinson, 24 Ala. 411, 415, 416.

In Jones v. Powell, 15 Ala. 824, an action of trespass on the case, it is said: "We do not think that the declaration sets forth a valid or binding contract between the parties. It commences by stating that the defendant represented to the plaintiff that by removing with his family to Texas he would be entitled to 320 acres of land, and that if plaintiff would remove to Texas with his family, by water, that the defendant would pay his expenses, provided he would convey to the defendant one-half of the land to which he would be entitled. It is not stated that the plaintiff accepted this proposition, nor that he did agree to remove with his family to Texas. * * * In declaring on contracts, the declaration must show a binding agreement between the parties, which has been violated. If a valid contract is shown, and the consideration is concurrent, that is, if the promise of the one is the consideration of the promise of the other to do a certain thing at the same time, the plaintiff must aver a readiness and willingness on his part to perform the promise."

The foregoing statement of the rule is in line with the conclusion announced in McGowin Co. v. Camp Lumber Co., 192 Ala. 30, 40, 68 South. 263.

In Terrell v. Nelson, 177 Ala. 596, 58 South. 989, where the breach of a contract to purchase stone at $1 per cubic yard was declared upon, it was pointed out that the failure of the complaint to further aver plaintiff's "ability, readiness, or willingness to comply with the same, or a legal excuse for not doing so," was fatal to a recovery. J. C. Lysle Mill. Co. v. North Ala. Groc. Co., 77 South. 748.[4] The existence of the duty on the part of the defendant must be specifically averred; that is, the facts so averred must show that the duty arose therefrom to the plaintiff. As to a complaint's "counting on the alleged nonfea-

[4] Post, p. 222.

sance or misfeasance of another," a statement of the pleader's conclusion on the subject cannot be accepted in lieu of properly averred facts "out of which a duty is supposed to have arisen." T. C., I. & R. R. Co. v. Smith, 171 Ala. 251, 55 South. 170; Iron & S. Co. v. Williams, 168 Ala. 612, 53 South. 76; Alabama Con., etc., Co. v. Hammond, 156 Ala. 253, 47 South. 248; Ensley R. Co. v. Chewning, 93 Ala. 24, 9 South. 458; Leach v. Bush, 57 Ala. 145; B. R., L. & P. Co. v. Anderson, 3 Ala. App. 424, 57 South. 103.

[21, 22] A cause of action is made up of a duty and a breach of it. A., T. & S. F. R. Co. v. Rice, 36 Kan. 593, 600, 14 Pac. 229; Clarke v. Ohio Co., 39 W. Va. 732, 20 S. E. 696. The former must be shown by the facts alleged in the declaration. Will's Gould on Pl. 2, 3. This is the rule, though the duty relied on by the plaintiff arose from the contractual relation of the parties, or originated entirely in a general obligation of law, or in an obligation arising out of, or by reason of, their vocation. And though the breach of such duty may be averred by way of a conclusion, it does not follow that the existence of the duty may be averred as a conclusion. Newton et al. v. Brook, 134 Ala. 269, 32 South. 722; Higdon v. Fields, 3 Ala. App. 322, 57 South. 58, and authorities.

The conclusion announced in Western Union Telegraph Co. v. Crumpton, 138 Ala. 632, 36 South. 517, was upon a complaint that claimed damages "for the breach of a contract made by the plaintiff and the defendant," by which the defendant undertook to transmit and deliver the message which is set out in the complaint, and the averment was made that the contract was broken by the defendant, in that it "negligently failed to transmit and deliver" the message, and that "by reason of the negligent failure of duty" on the part of the defendant the plaintiff suffered the injuries complained of. Such count was held sufficient to state a cause of action ex contractu, and the averments of negligence to be merely descriptive of the mode in which the contract was broken. In the Crumpton Case the complaint contained the further averment that the defendant was engaged in the business of transmitting messages for hire; that the plaintiff paid the defendant the charges for sending said message from and to the indicated termini—and thus was the consideration for the contract averred. W. U. Tel. Co. v. Garthright, 151 Ala. 413, 44 South. 212; W. U. Tel. Co. v. Krichbaum, 132 Ala. 535, 31 South. 607.

As an exception to this rule, Mr. Justice Tyson says of a complaint declaring for the partial performance of a contract: "But if it be said that the count shows a partial performance by defendant of the contract alleged, and therefore no consideration for it need be averred, it is not shown, except perhaps inferentially, that it was binding upon the parties at the time defendant failed or refused

to furnish the water." Spencer v. Bessemer Waterworks, 144 Ala. 587, 595, 39 South. 91; Russell v. Bush, 196 Ala. 309, 315, 71 South. 397; Will's Gould on Pl. p. 230, and notes.

[23, 24] In the instant complaint, it is not averred that the contract was in writing or that it was executed on plaintiff's part, and it was therefore subject to the ground of demurrer that it did not state the consideration for the obligation of the defendant. B. R., L. & P. Co. v. Abbott, 6 Ala. App. 643, 60 South. 970; Newton v. Brook, supra. For, in a count for the breach of a contract to furnish the plaintiff electricity at his residence in said city, the averment that "the defendant was then and there under contract with plaintiff to furnish the plaintiff electricity" at his residence in Bessemer, was obviously a legal conclusion, and added nothing to the complaint.

It results that any expression contained in Moseley v. Wilkinson, 24 Ala. 411, to an effect contrary to the holding in this case, is hereby qualified.

The application for a rehearing is granted, the judgment of affirmance heretofore rendered in this court is set aside and vacated, and the judgment of said city court is reversed, and the cause is remanded to the circuit court, for the failure to sustain the demurrer to the complaint in the respect indicated.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and MAYFIELD, JJ., concur. SOMERVILLE, J., concurs in the opinion, but is of the view that the cause should not be reversed, because the ruling was error without injury. SAYRE and GARDNER, JJ., dissent.