# City of Montgomery *v.* Greene, *et al.*

## *Mandatory Injunction.*

(Decided January 23, 1913.  Rehearing denied February 14, 1913.
60 South. 900.)

1. *Waters and Watercourses; Public Supply; Duty of City.*—Under Acts 1890-91, page 243, it was the duty of the city to furnish and maintain water mains which its patrons could connect with their service pipes, regardless of whether the mains are laid by the city or by the consumers jointly, especially where the consumers laid a main pipe to their property and offered to donate it to the city.

2. *Same; Pipes and Meters.*—Where a city had the right to charge for water by measurement it was its duty to furnish meters; and where the residents of a district, within its police jurisdiction though not within its municipal limit, were charged only for water used by them respectively and they constructed a main and service pipe and offered the main to the city it was the city's duty either to take over the main, or place a main near their property and install individual meters for each consumer, so that they will not be required to answer jointly for the water consumed by all, as measured by one meter at the head of the main service pipe.

3. *Same; Rights of Consumers; Injunction.*—Where a city maintains a public water supply and cuts off water to consumers for non-payment of charges for excess of water not properly measured, such acts will be enjoined.

4. *Same; Uniformity of Charges.*—Where a municipality is authorized to supply water to consumers it cannot discriminate as to the rates charged, at least among those of the same class, for all persons are entitled to have the same service on equal terms and uniform rates; hence, where a city exercises its option to extend its mains beyond its municipal limits, it may not discriminate in favor of those who reside within the city limits and who are liable for water taxes, since the supplying of water and the rate charged is not an exaction of a duty or tax, but is the mere furnishing of a public necessity, which must be supplied to all consumers alike.

5. *Same; Rights of Private Consumers.*—Where a city is authorized to maintain a public water works and exercises its option to extend its mains beyond its municipal limits, it cannot arbitrarily limit its service to such consumers as are technically residents of the city, notwithstanding the rights of persons living outside may depend upon the sufficiency of the supply and their distance from the mains.

6. *Same; Capacity of Municipality.*—Municipalities supplying their inhabitants with water are not in the exercise of the power of local sovereignty in so doing, but act in the capacity of private corporations, and stand upon the same footing in this respect as do private corporations.

APPEAL from Montgomery Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by R. H. Greene and others against the city of Montgomery. From a decree for complainants, respondent appeals. Affirmed.

The case made by the bill is that, under an act of the Legislature, the city of Montgomery is furnishing water through a waterworks system, owned and operated by it, to the inhabitants of the city of Montgomery, both within the city and without the city, but in the police jurisdiction thereof; that, before the town of Cloverdale was incorporated, the city of Montgomery did extend and lay a water main, as part of its waterworks system, along the street known as the Norman Bridge Road, passing the intersection of Cloverdale Road, which place was at that time, and is now, outside the corporate limits of the city, but within the police jurisdiction of said city; that orator Greene occupies lot 15 in block 17, orator Roquemore occupies lots 3 and 4 in block 17, and Matthews occupies lots 11 and 12 in block 17 in the town of Cloverdale, all according to the map of said town; that prior to March 1, 1906, and prior to the incorporation of the town of Cloverdale, your orators or their privies in estate, at their own expense, laid a water pipe diagonally across blocks 1 and 6, and into the Cloverdale Road, and thence extending along the Cloverdale Road to its intersection with Ridge avenue or Felder street, and then extending along Felder street to a point opposite lots 3 and 4 of block 17; and that at said point Roquemore laid a pipe to his residence, and the pipe was laid across lot 4 and into lots 11 and 12 and into the residence of said Matthews, and a pipe was laid from said intersection of Felder street and the Cloverdale Road and into the lot occupied by said Greene and his residence, and also

[City of Montgomery v. Greene, et al.]

laid a pipe into lots 6 and 7, in block 6, into the residence of H. A. Whittle, which main pipe was afterwards tapped into the water main or pipe of the city of Montgomery at the intersection of the Norman Bridge and Cloverdale Road; and the said parties or their privies entered into an agreement with the city of Montgomery to supply the water through said pipes, and the city of Montgomery placed a water meter on said pipe, at or near the Norman Bridge Road, to measure the water passing through said pipe to your orator, orator agreeing to pay therefor $16 each quarter of a year, beginning January 1st, with the privilege of using 80,000 gallons per quarter, and, if more than 80,000 gallons was used per quarter, to pay the city of Montgomery at the rate of 35 cents per 1,000 gallons in excess of 80,000 gallons per quarter. The bill then avers a claim by the city for 25,000 gallons excess for the quarter ending April 1, 1912, with the allegation that the city insists on the payment of the bill; that orators offered to pay $16, which was tendered and refused. The city has threatened, and does threaten, to shut off the water supply through said pipes, and to cease and discontinue water service to complainant. It is then averred that the meter was rusty and does not accurately measure the water, and that no such amount as claimed was used. The averment is then made of orator's readiness, ability, and willingness to pay into court any amount of money that the court may order and direct during the pendency of this cause, and until the same is finally determined. The bill also averred the readiness, ability, and willingness to pay for the quarter under dispute, or to pay any just and fair amount for the water consumed. It is then averred that orators have requested the city to place individual meters on the several pipes at the property line leading

into the different residences, so as to measure the water consumed separately and individually by each of your orators, and at the same time have offered to give or donate to the city, free of charge, the said water pipe from the Norman Bridge Road to the property line of their respective residences; and that the city has refused and declined to place said meters as requested, and arbitrarily insist upon having one meter at the Norman Bridge Road to measure the water to your orators, and compel orators to divide and adjust among themselves, as best they may, the charges therefor; and it is impossible for them to ascertain or know the amount of water used by them respectively, so that they can pay each for the water consumed by him—all of which is unjust and unfair. It is then averred that, when the private line was laid, the city of Montgomery did not have, and would not lay or extend, a water pipe to their said residences, thereby forcing orators to build and lay their own water pipe at their own expense. The regular charges for water in the city are then alleged to be $3 per quarter for the use of 20,000 gallons or less and, for any excess over 20,000 gallons, of 25 cents per 1,000; that orators have requested the same rate, which has been refused, and which is a discrimination against orators. It is then alleged that the city has and does place individual meters for other persons in the immediate neighborhood, which persons have laid pipes from said city main to their residence, and that some of said meters are placed on pipes for others within 100 feet of Roquemore's property line, where he has requested a meter to be placed, and that other meters have been placed for others within 200 or 300 feet of the places where Roquemore and Matthews desire their meters to be placed, and that individual meters have been placed on other lines, some much longer, and

some much shorter, from the city's main than the pipes of orator. The bill then alleges to what use the water is put, and that orator will be greatly inconvenienced by having the water service discontinued, which the city has threatened to do, unless the bill above mentioned is paid on or before the 20th day of April, 1912. On these facts, it is prayed that the city be enjoined from cutting off the water, but that they be required to continue the service until the final determination hereof. The bill then prays for a permanent injunction, and that the court proceed to fix and determine a just and reasonable rate for your orators to pay for water furnished and supplied to them by the city of Montgomery, and that the city be directed and required to place individual meters for each of your orators, and be required to furnish water through said pipe laid by orators individually, and to make separate and individual contracts with orators to supply them with water. On the case made by the affidavits of the complainants and the respondents and their agents, and the allegations of the bill, the chancellor granted the relief prayed, from which decree the city appeals.

JOHN V. SMITH, C. P. MCINTYRE and J. M. FOSTER, for appellant. The city may classify its water consumers and so long as its classification is reasonable and the rules and regulations uniform there is no discrimination.—40 Cyc. 802; 120 U. S. 600; 116 U. S. 289; 97 U. S. 200; *Amy v. Selma,* 77 Ala. 103; 28 Cyc. 175; *Phoenix Assurance Co. v. Fire Dept.,* 117 Ala. 631; *Smith v. B'ham Water Works,* 104 Ala. 315; *Ferguson v. B'ham Water Works,* 164 Ala. 586. The city had the right to require water consumers to maintain the service pipes and to be responsible for the same.—67 W. Va. 285; 68 S. E. 29; 40 Cyc. 794. The complain-

ants were bound by the reading of the meters unless it appeared that the registration was wrong.—40 Cyc. 795; 115 N. Y. App. 215.

ROQUEMORE & GRAHAM and HILL, HILL, WHITING & STERN, for appellee. There was no misjoinder of parties complainant.—*Meachem v. Wyatt*, 21 Ala. 815. Injunction was the proper remedy.—2 Dillon Munic. Corp. sections 911-920; *B'ham v. Keily*, 56 South. 841; *Smith v. B'ham W. W. Co.*, 104 Ala. 315; *Christian v. Beinville W. W. Co.*, 106 Ala. 124; *Bienville v. Bienville*, 112 Ala. 260; 152 Mass. 556; 40 Cyc. 792, 805. The city is operating under authority of the Legislature and is in the exercise of private corporate powers and not the powers of local sovereignty. It cannot therefore discriminate against citizens of the same class.—*Mobile v. Bienville W. W. Co.*, 130 Ala. 379; 28 A. & E. Ency. of Law, 818; *Mayor v. B'ham W. W. Co.*, 42 South. 115; *Ferguson v. B'ham W. W. Co.*, 164 Ala. 586. Imaginary corporate limits is not a rule for discrimination.—1 Farnum on Waters, 757; 47 Atl. 843; 4 DeG. & J. 596; 47 N. W. 781 and authorities supra; *Brown v. Meridian*, 59 South. 795. The city is without right to charge the consumer with the setting of meter boxes.—*Montgomery L. & W. P. Co. v. Watts*, 165 Ala. 370; *Tallassee F. M. Co. v. Commissioners Court*, 48 South. 354; 180 U. S. 624; 69 Am. St. Reps. 303. The city was without right to compel a number of consumers to use water passing through a joint meter.—*Sterns v. McArdle*, 24 Ala. 344; *Smith v. B'ham W. W. Co.*, supra.

ANDERSON, J.—Under the act of January 26, 1891 (Laws 1891, p. 243), authorizing the city of Montgomery to maintain a water supply system and under the

ordinances of said city, it is the duty of the city to furnish and maintain the water main with which its patrons can connect their service pipes. The service pipe, as required of the consumer, means only a connection from the residence of the owner with the main artery which supplies the water to the street or immediate locality on which, or in which, his property is located, whether said artery be designated as a main or service pipe. Nor does it matter, as to maintenance, whether it was laid by the city or by consumers jointly, especially when the consumers, as in the present case, offered to donate to the city the main pipe running from the Norman Bridge Road to their property, and requested separate meters.—*Brown v. City of Meridian*, 59 South. 795.

The bill avers that other inhabitants of Cloverdale have been given separate meters, and are charged only for water used by them respectively; and we think that it is but fair and just that each of these respondents be put upon a separate meter basis, and not be required to answer jointly for the water consumption of all, and as measured by one meter at the head of the main service pipe.—*Stein v. McArdle & Waters*, 24 Ala. 344. In all cases where the respondent has the right to charge for water by measurement, and demands pay for water furnished, it is incumbent upon the said respondent to furnish meters. In the case at bar, it was the duty of the respondent to either take over the main pipe offered it by the complainants and maintain same, or else place a main near their property, which they could tap with service pipes running from their said lots to the highway near or adjacent thereto, and to install individual meters for the measurement of the water of each consumer, and it cannot shut off the water supply for the nonpayment of charges for an ex-

cess of water which has not been properly measured or justly ascertained. In case the respondent was to cut off the water for the nonpayment of said excess, it would not only be wrongful, but the damages would be irreparable, and a court of equity will not hesitate to interfere by injunction.—*Smith v. Birmingham Water Works*, 104 Ala. 325, 16 South. 123.

It may be stated, as a general proposition of law, that a corporation or municipality, authorized to supply water or lights to the inhabitants of a municipality, may not discriminate as to the rates charged, at least among those of the same class.—*Ferguson v. Birmingham Water Works*, 164 Ala. 586, 51 South. 354, 27 L. R. A. (N. S.) 674, and note. "The acceptance by a water company of its franchises carried with it the duty of supplying all persons along its mains, without discrimination, with the commodity which it was organized to furnish. All person are entitled to have the same service on equal terms and uniform rates."—*City of Mobile v. Bienville Co.*, 130 Ala. 384, 30 South. 447. The service cannot be arbitrarily limited to such consumers as are technically residents of the municipality, although the right of persons living within the city or beyond may depend upon the sufficiency of the supply and the contiguity or remoteness of such persons from the mains.—40 Cyc. 793, and cases cited; 30 Am. & Eng. Encyc. Law, 418, 419. It may be that the act of 1891 left it optional with the city as to whether or not it would attempt to supply water beyond its corporate limits to points within its police jurisdiction, but, when it attempts to do so, it must be with uniformity, and without discrimination; and, if the citizens of Cloverdale are on its mains, they should be given the same uniform rate· as is the general rate for others along or upon its mains, and a different rate, fixed wholly upon

the corporate lines as the line of demarcation, in the absence of physical differences, is an unreasonable classification. This rule applies to municipalities operating their own water system, as well as to individuals or corporations who undertake to supply water or lights. "Water rates paid by consumers are not taxes, but simply the price paid for water as a commodity." —30 Am. & Eng. Encyc. Law, 426. Therefore the argument of appellant that the city has the right to discriminate in favor of those who reside within the city limits, and who are liable for city taxes, is without merit, as the supplying of water and the rate charged is in no sense the exaction of a duty or tax, but is the mere furnishing, as a monopoly, a public necessity, and which must be supplied to all consumers alike, and without an unreasonable discrimination either as to price or classification.

The case of *State ex rel. Ferguson v. Birmingham Water Works,* 164 Ala. 586, 51 South. 354, 27 L. R. A. (N. S.) 674, as to the general principle there announced, supports this holding; nor is the conclusion reached in said case opposed to the present holding. There it was simply held that the granting of a special rate to a few, which was less than a reasonable rate, was not per se such an unjust discrimination as to render the general rate charged unreasonable or unjust, so long as the general rate was within the bounds of the maximum rate fixed by the contract. Here we have no concession to a few consumers; but we find a greater rate charged to a few than is charged to the public generally, or rather a greater rate against the few citizens in Cloverdale than is being charged to all of the citizens of Montgomery, simply because the latter are within, and the former are beyond, the corporate limits of the city.

The decree of the chancery court is affirmed. Affirmed.

DOWDELL, C. J., and MAYFIELD and DE GRAFFENRIED, JJ., concur.

ON REHEARING.

ANDERSON, J.—The rulings in this case are predicated upon the averments of the bill of complainant which was before the court, and said facts were not misunderstood, and are now understood to be substantially as contended for in brief upon rehearing, and a restatement of same is unnecessary. We did not hold that the city must continue to use the pipe in question instead of laying a new main in its place, if it prefers incurring the additional expense. We did hold, however, and which we repeat, that, notwithstanding the pipe was laid by property owners, it was along a highway; and after the city availed itself of the authority, given by the statute, to extend its water system throughout the town of Cloverdale, which is within its police jurisdiction, and continued to use this pipe, that it became its duty to maintain it, especially after the owners had offered it to the city, else give them a main and separate meters, as the bill avers was being done for the other citizens of Cloverdale, and who were within close proximity to these complainants. We also repeat that the *Brown Case, supra,* has considerable bearing on this question. Counsel concede the soundness of the *Brown Case, supra,* but contend that it has no application to the present case, for the reason that the city of Montgomery had no right, authority, or jurisdiction over the streets of Cloverdale, and along which this pipe is laid. The bill avers that it has been sup-

plying water to other citizens of Cloverdale through mains or pipes laid upon the streets of said municipality; and it would no doubt have as much right to excavate the highway upon which the present pipe is as it had to lay mains upon other highways of Cloverdale. Section 4 of the Act of 1891, p. 243, authorizes the city, among other things, to "extend such waterworks into any part of the police jurisdiction of said city as it may deem proper, and in the event all the powers herein given such city shall apply to such portion of said waterworks." In other words, the city has as much authority to excavate the streets of Cloverdale as it has the streets of Montgomery for the purpose of maintaining and operating its water system. The act, therefore, refutes the distinction attempted as showing the nonapplicability of the *Brown Case, supra.*

As to the right of the city to discriminate, counsel concede that the opinion is sound in holding that the charge for water was not a tax, and that the fact that one is within, and one beyond, the corporate limits is not such a substantial difference as will authorize a discrimination as to charges, but proceed to argue upon the theory that the taxpayer within the city should require better rates than those in Cloverdale, notwithstanding Cloverdale is within the police jurisdiction of the city of Montgomery. The argument proceeds as follows: "We have read, with great care, the court's decision upon this phase of the case. The opinion is permeated with, and based upon, a false conception. We are not here concerned with a private corporation engaged in the business of supplying water to the public for profit to its stockholders. Were that the case, the court's decision would be above criticism." In other words, the opinion is wrong only because the water

[Bains Bros. Inv. Co. v. Purdie.]

system is owned and operated by the municipality instead of a private corporation.

We reply that, if the opinion would be correct as to a private corporation, it is bound to be correct as to a. municipality which operates the water system, else the authorities are all wrong. "A municipal corporation, which supplies its inhabitants with water, does so in the capacity of a private corporation, and not in the exercise of the power of local sovereignty."—30 Am. & Eng. Encyc. of Law, 404. Municipalities stand upon the same footing in this respect as would an individual or private corporation.—*Wagner v. Rock Island,* 146 Ill. 139, 34 N. E. 545, 21 L. R. A. 519; *Bailey v. New York,* 3 Hill (N. Y.) 531, 38 Am. Dec. 669; *Western Sav. Fund v. Philadelphia,* 31 Pa. 175, 72 Am. Dec. 730; *Brumm's Appeal* (Pa.) 12 Atl. 855.