(88 South. 671)

## CITY OF MONTGOMERY v. SMITH.
### (3 Div. 503.)

(Supreme Court of Alabama. April 21, 1921.)

**1. Appeal and error ⟜232(1½)—Ground of demurrer not assigned below cannot be urged on appeal.**

Under Code 1907, § 5340, an objection to a bill not assigned as ground of demurrer in the lower court cannot be maintained on appeal.

**2. Waters and water courses ⟜203(3)—Municipality cannot discriminate in water charges between consumers of the same class.**

Neither a waterworks company nor a municipality operating such a public utility may lawfully make and enforce discriminatory rates between customers who are members of the same class.

**3. Waters and water courses ⟜203(8) — No charge can be made for water meters to measure water used by patrons.**

The city of Montgomery furnishing meters to measure the water used by its customers so as to compute the charges permissible under Act Jan. 26, 1891 (Acts 1890–91, p. 243), cannot make an extra charge for the meter.

**4. Statutes ⟜206 — In construing statute every word and each section must be given effect if possible.**

In construing a statute, every word and each section thereof must be given effect if possible, and construed with other sections in pari materia.

**5. Waters and water courses ⟜203(1)—Water rates charged by municipality are not taxes.**

Water rates charged by the city of Montgomery in the exercise of the power conferred by Act Jan. 26, 1891 (Acts 1890–91, p. 243), are not taxes, but are merely the prices to be paid for water as a commodity.

**6. Municipal corporations ⟜111(1) — Ordinance should be given construction which will not render it discriminatory.**

When a contract ordinance with a public utility company or an ordinance governing a municipality operating such public utility is susceptible of two constructions, one rendering it discriminatory, unjust, and unlawful, and the other reasonable and uniform, the latter construction will be adopted.

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**7. Waters and water courses ⟨⟩203(5)—City not entitled to charge additional water rate for each "family" domiciled in a single house.**

Act Jan. 26, 1891 (Acts 1890–91, p. 243), § 4, declares that the city council of Montgomery shall collect such rates for water supplied as it may deem just and proper not to exceed the usual and customary rate charged by other cities similarly situated, and in section 7 that it shall be the duty of the city council to charge individuals and corporations furnished with water a sum sufficient to pay interest in the bonds and operating expenses, etc., provided that the rate shall not exceed the limit prescribed. Ordinance July 27, 1920, declared that the minimum charge per quarter for water supplied through a single service connection to two or more houses, apartments, families, or firms shall be $3 per quarter for each of such houses, apartments, families, or firms supplied, which charge shall entitle each of such houses, apartments, families, or firms to the use of 20,000 gallons per quarter, etc. Complainant, an unmarried man, resided in his own house together with three other married couples, and all parties were supplied with water through a single service connection through two plain faucets. *Held,* that but a single charge could be exacted, notwithstanding several families occupied the same house; the word "families," in view of the rule of ejusdem generis, applying to families domiciled in separate houses or apartments, and the provision as to the quantity of water which could be used protecting the municipality.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Family.]

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill by Jerry Smith against the City of Montgomery to enjoin the enforcement of an ordinance relative to water as discriminatory and unjust. From a decree overruling demurrers to the bill, the City appeals. Affirmed.

Ludlow Elmore, of Montgomery, for appellant.

The city had the right to enact the ordinance in the terms in which it was enacted. Acts 1890–91, p. 243; 104 Ala. 325, 16 South. 123. Counsel discuss and criticize cases cited by the court in its decree in overruling the demurrer, but cite no further authority.

Hill, Hill, Whiting & Thomas, of Montgomery, for appellee.

The following authorities fully justify the court in the decree rendered, which was in effect to declare the ordinance discriminatory and void: Acts 1890–91, p. 243; 165 Ala. 370, 51 South. 726, 26 L. R. A. (N. S.) 1109, 138 Am. St. Rep. 71; 180 Ala. 322, 60 South. 900; 180 Ala. 156, 60 South. 797; 104 Ala. 325, 16 South. 123; 42 South. 10; 204 Ala. 51, 85 South. 291; 130 Ala. 379, 30 South. 445; 191 Ala. 457, 67 South. 613, L. R. A. 1915D, 1086; 201 Ala. 141, 77 South. 565.

THOMAS, J. The bill prayed injunction to prevent cutting off the water supply from service connection to complainant's house within the city of Montgomery, and to prevent discrimination against him in rates charged for water.

In addition to the necessary and formal averments, it is averred:

"That the city of Montgomery under authority granted by the Legislature of Alabama is engaged in conducting, maintaining and operating waterworks for supplying the city of Montgomery and its inhabitants with water, and requires by ordinance all of the inhabitants of said city to purchase their water from said city, and prohibits all wells or other sources of water supply in said city. That the said city has the exclusive monopoly of the business of furnishing water to its said inhabitants.

"That complainant is an inhabitant of said city, and as such has for a long time been purchasing the water which he used or consumed from the said city. That complainant is an unmarried man and has no family other than himself. That he resides in a house owned by him in said city, wherein also reside three married couples, all of different families and all without children. That these are all of the residents of said house and are all of the persons using water from the service connection leading into said house. That all of the residents of said house are supplied with water by the said city through a single service connection leading into the said house through two plain faucets, and have been so supplied for a long time prior hereto. That prior to October 1, 1920, your complainant and the other residents of said house have been charged by the said city and have paid together a minimum charge of $3 per quarter of a year for all the water supplied through said service connection, which charge entitled all of the said residents of said house together to the use of 20,000 gallons of water per quarter of a year. That this was the same charge that was made upon all other inhabitants of houses in the said city supplied through a single service connection. That at no time have the said residents of said house together used more than 20,000 gallons of water per quarter of a year."

It is further averred that due tender was made of proper charges by the consumer (B. R. L. & P. Co. v. Littleton, 201 Ala. 141, 77 South. 565), which was refused by the city and an excessive sum demanded as a minimum charge for the "quarter of a year"; and complainant has been notified that on failure of such payment the city will "cut off from said service connection [complainant's water supply] and complainant will be deprived of the use of the water therefrom, to his great and irreparable damage."

The city claims that it is controlled, as to the complainant's said property and the water rate for the quarter for water supply or

service therein and for which payment was demanded, by the ordinance of July 27, 1920, "To fix the charge for water supplied to two or more houses, apartments, families or firms through a single service connection," as follows:

"Be it ordained by the board of commissioners of the city of Montgomery, as follows:

"Section 1. That beginning with the quarter commencing October 1st, 1920, the minimum charge per quarter for water supplied through a single service connection to two or more houses, apartments, families or firms shall be three ($3.00) dollars per quarter for each of such houses, apartments, families or firms supplied; which charge shall entitle each of such houses, apartments, families or firms to the use of twenty thousand gallons per quarter; provided, however, that in case any such house, apartment, family or firm is supplied through one plain faucet only without bath or sanitary connection, the minimum charge for such house, apartment, family or firm so supplied shall be one and $50/100$ ($1.50) dollars each per quarter, entitling each of such houses, apartments, families or firms to the use of ten thousand gallons per quarter.

"Section 2. Water used in excess of the amount allowed under minimum rates shall be paid for at the usual excess water rate."

Appellee's challenge of this ordinance is as to the manner of its construction and proposed enforcement, and that it operates as a discrimination against him and his said property. It is averred in the bill:

"That large families and firms in said city are constantly using and consuming far more water than your complainant and the other residents of said house, and are supplied with said water by said city under said ordinance at greatly lower rates than the rate which said city is demanding of your complainant. Wherefore, the said city is attempting to make and enforce discriminatory rates to complainant and other inhabitants of said city to the great detriment of complainant. And complainant avers that said ordinance and said acts and conduct of said city thereunder are totally void and are in direct violation of the statute authorizing said city to maintain and operate said water works, and to collect rates for the water supplied, used or consumed therefrom."

The city of Montgomery demurred to the bill on grounds that it was "without equity"; that "a complete and adequate remedy at law" is shown to have existed; that the discrimination averred is a "conclusion of the pleader," and it is not shown "that the classification for purposes of water rates made in said ordinance is unreasonable or unjust," and as to complainant that "the classification of rates for the use of the water as made under the ordinances complained of" are shown to be "reasonable and proper." Demurrer was overruled, and from this decree respondent appealed.

[1] Appellant may not maintain in this court an objection to the bill that is not as-

signed as a ground of demurrer in the lower court. Code, 1907, § 5340; Doullut & Williams v. Hoffman, 204 Ala. 33, 86 South. 73; Ex parte Walker D. Hines, Director General (In re Hines v. McMillan) 87 South. 691;[1] McWilliams v. Birmingham Southern R. Co., 85 South. 293;[2] Ex parte Payne Lumber Co., 203 Ala. 668, 85 South. 9; Sugar Valley Land Co. v. Johnson, 17 Ala. App. 409, 85 South. 871.

[2] That a waterworks company, or a municipality operating such public utility, may not lawfully make and enforce discriminatory rates among consumers, members of the same class, has been decided by this court. City Cleaning Co. v. Birmingham W. W. Co., 85 South. 291;[3] B. R. L. & P. Co. v. Littleton, supra; Bessemer W. W. Co. v. City of Bessemer, 198 Ala. 535, 540, 73 South. 905; Birmingham W. W. Co. v. Hernandez, 196 Ala. 438, 447, 71 South. 443, L. R. A. 1916E, 258; City of Montgomery v. Greene, 180 Ala. 322, 60 South. 900; Id., 187 Ala. 196, 65 South. 783; Cloverdale Homes v. Town of Cloverdale, 182 Ala. 419, 62 South. 712, 47 L. R. A. (N. S.) 607; Birmingham W. W. Co. v. Brown, 191 Ala. 457, 67 South. 613, L. R. A. 1915D, 1087, notes; City of Birmingham v. Birmingham W. W. Co., 42 South. 10; Smith v. Birmingham W. W. Co., 104 Ala. 315, 325, 16 South. 123.

What then is the city's authority to maintain and operate a waterworks system, and to make and prescribe reasonable regulations and rates governing the installation and maintenance of the supply of water to its citizens or patrons? The city of Montgomery derives its authority to this end from the Act of January 26, 1891 (Acts 1890-91, p. 243), providing, among other things:

"That the said city council shall be, and is hereby invested with full power to make all proper regulations for preserving, maintaining and operating such water works when established, and to collect such rates for water supplied as it may deem just and proper, but not to exceed the usual and customary rates charged by other cities similarly situated, for like service." Section 4.

And that it shall be the "duty of the said city council to charge individuals and corporations who may be supplied with water from the waterworks to be purchased or erected under this act, a rate for the water used or consumed by such persons or corporations, sufficient to pay the interest on said bonds which are to be issued under this act, and to collect the dues for water so used, and apply the same to the payment of such interest: Provided, the rates so charged and collected shall not exceed the limit prescribed by section 4 of this act; and provided further, that the operating expenses of said works shall first be paid from such dues." Section 7.

[3] Incident to the exercise of its charter powers in the installation and maintenance

[1] Ante, p. 17.    [2] 204 Ala. 53.    [3] 204 Ala. 51.

of a public utility, and furnishing of water therefrom to those of the general public entitled to such service, it was held, as a necessary consequence, that meter boxes required to measure the water used should be furnished by the city without extra charge to the patron. Of this it was observed:

"We find no authority in the charter which would authorize the city, by ordinance or otherwise, to require the consumers to pay such charge for installing meter boxes, which property belongs to the city or the water company, and is necessary to the performance of its charter powers in furnishing water to consumers, who are required to pay for water so measured by such meters. Montgomery Light & Water Power Co. v. Watts, 165 Ala. 370." City of Montgomery v. McDade, 180 Ala. 156, 158, 60 South. 797; State ex rel. Weatherly v. Birmingham W. W. Co., 185 Ala. 388, 64 South. 23, Ann. Cas. 1916B, 166; B. R. L. & P. Co. v. Littleton, supra.

[4, 5] By the aforequoted section of the Act of January 26, 1891, the city is empowered to collect only such rates for the water supplied as may be deemed just and proper, not to exceed the usual and customary rates charged by other cities similarly situated for such service. In a construction of this power it was said that whether the system be operated by municipalities, individuals, or corporations, such reasonable rates that may be charged "are not taxes, but simply the price paid for water as a commodity," and are "in no sense the exaction of a duty or tax" for merely furnishing by "a monopoly, a public necessity, and which must be supplied to all consumers alike, and without an unreasonable discrimination either as to price or classification. City of Montgomery v. Greene, 180 Ala. 322, 330, 60 South. 900, 902. That was a correct and just construction of the statutory power to make reasonable charges for water furnished by the municipality to those of the general public using the same.

Observe the use of the expressions in section 7 of the act, "who may be supplied with water," "a rate for the water used or consumed," "dues for water so used," and "the rates so charged and collected shall not exceed the limit prescribed by section 4 of this act." However, appellant urges that the purpose of section 7 is to require the rates prescribed by section 4 to be adequate to pay the bonds or interest for the purchase, construction, and maintenance of the water plant, and for its reasonable operation by the municipality. It is true that such is its primary object, but every word of the act and each section thereof must be given effect, if possible, and construed with the other sections (being pari materia, 11 Michie. Ala. Dig. § 139, p. 1111), to ascertain the power of regulation, maintenance, and operation of the waterworks by the municipality or other person or corporation operating the same, and to define the duty of such operator to the consumer on the one hand and the bondholder and necessary expense of operation on the other. After all that may be said of the rates or charges authorized by law to be charged by the city and demanded of the consumer, provision is made by law for compensation for the water supplied by the city, and used or consumed by the patron. It is for this commodity or facility, so necessary to community life in a populous city, that rates may be "so charged and collected"; and that rate must not be discriminatory among consumers, being members of the same class.

[6, 7] What, then, is the just and fair unit of admeasurement or charge under the Montgomery ordinance, as affecting the class to which complainant and his house or dwelling belongs or may be assigned? A unit of admeasurement, or basis for the rate of charge in an ordinance contract, construed in Smith v. Birmingham W. W. Co., 104 Ala. 315, 326, 16 South. 123, 126, was a "dwelling," which was sought to be defined as follows:

"It is not necessary that a room or rooms or building be occupied by a family, to constitute a dwelling. If the owner has appropriated and devoted certain rooms of these buildings to such uses, and they are thus used, as that if there were no other rooms in the building than those thus occupied, the building would thereby be a 'dwelling' within the meaning of the contract as we have declared, and to such extent they must be regarded as dwellings."

However, on this point this case was overruled by one not printed in Alabama Reports and appearing only as Mayor, etc., of Birmingham v. Birmingham Waterworks Co., 42 South. 10, 12, 13. In this latter case a construction was sought of certain of the provisions of a contract between the city of Birmingham and the Birmingham Waterworks Company, and on facts stated that are very similar to those of the bill in the instant case, the same being (paragraph O of the bill, 42 South. 12):

"Said company computes and charges for a single house as two or more dwellings where two or more families live therein, neither lodging with the other, but each paying rent to the landlord or his agent, where the rooms occupied by each family are separated by a partition from those occupied by every other family, and where there are no common halls, entrances, exits, and only the yards being common where each of such families uses water from one common hydrant."

It is to be observed that the several rooms of the respective lodgers of the single house or building were separated by a partition from those occupied by every other family; that there were no "common halls, entrances, exits," and only the yard and the one common hydrant therein were used in common

by each of such families. Treating that phase of the said bill, the observation is made through Mr. Justice Anderson that—

"We do not think that because a single house is divided up into residence apartments by different families or persons that the respondent would have a right to treat each separate room or apartment as a distinct dwelling. It is true that a person residing in but one room of a building would be a dweller, and the place where he resided, though but one room, might be technically termed his 'dwelling,' but we do not think that the contract contemplated that the respondent would have the right to charge for each apartment of the same dwelling as a separate and distinct dwelling. It is true the construction given the contract in the Smith Case, supra [104 Ala. 315], gave the respondent the right to so charge, but we do not consider that case sound and it is hereby overruled on this point as well as in holding that the meter rate did not apply to the whole of such a building as is described in the Smith Case, supra. In fact we think the word 'dwelling' as used in section 12 of the contract applies to such buildings as are considered dwellings in common parlance. The respondent has the right to charge each occupant for a separate dwelling, as is described in paragraph O, as each seems to be a separate and distinct dwelling that comes within the spirit of the contract."

There was no disagreement as to the holding on the phase of the bill covered by paragraph O, and of the overruling or modification of expressions contained in the discussion of the "dwelling" as a unit of admeasurement and charge, in Smith v. Birmingham W. W. Co., supra. The concurrence on that point was by Chief Justice McClellan and Justices Tyson, Dowdell, Anderson, Simpson and Denson; the disagreement being as to other provisions of the contract, decided by Mr. D. M. Powell as a special judge appointed by authority of law obtaining in such a case of disagreement of the justices.

In Sims v. Alabama Water Co., 87 South. 688,[4] the contract involved defined "consumer" as "each separate family, business, firm, corporation or individual, using water for domestic or commercial purposes, and shall not include manufacturers and railroads."

When a contract ordinance with a public utility company, or an ordinance governing a municipality operating such public utility, is susceptible of two constructions, one rendering it discriminatory, unjust, and unlawful, and the other reasonable, uniform, and within the law, the latter construction will be adopted. Bishop on Contr. § 392, p. 153; Clark on Contr. (1894) p. 593; 2 Dillon's Mun. Corp. § 646. Otherwise stated, where a statute, if applied to a certain class, would result in the violation of the Constitution as being unreasonable and arbitrary, and no such result would follow if the application is made to a different class, it will be held to

apply to the latter only, if this is in harmony with the general disclosed legislative purpose. State ex rel. City of Mobile v. Board, etc., 180 Ala. 489, 501, 61 South. 368; Fairhope S. T. Corp. v. Melville, 193 Ala. 289, 69 South. 466. And such is the rule of construction and field of operation to be given to municipal ordinances. Standard Oil Co. v. City of Birmingham, 202 Ala. 97, 79 South. 489; Sloss-S. S. & I. Co. v. Smith, 175 Ala. 260, 265, 57 South. 29; Orme v. Mayor, etc., of Tuscumbia, 150 Ala. 520, 522, 43 South. 584; Dreyfus v. City of Montgomery, 4 Ala. App. 270, 58 South. 730.

As applied to complainant in the use of his building as a dwelling the ordinance was "to fix the charges for water supplied to two or more houses, apartments, families or firms through a single service connection." The word "families" succeeding "houses, apartments," construed under the ejusdem generis rule, should be given a more extended or general meaning than may be susceptible when standing alone. State v. West. Union Tel. Co., 196 Ala. 570, 573, 72 South. 99; Perry v. South. Exp. Co., 202 Ala. 663, 81 South. 619. And as being a part of an ordinance providing for the rates charged for water furnished by the city where two or more families are supplied through a single service connection, the word "families" has the meaning of families domiciled in separate houses or apartments; the city being protected in the reasonable use of its water supply by the minimum quantity fixed at 20,000 gallons per quarter for the charge indicated. The construction of the ordinance sought to be given by the city making each room of complainant's house a unit of admeasurement, depending upon the nature or character of the occupant thereof and of his tenure thereto, would render the rate of charge for water furnished complainant's house unreasonable and discriminatory and without relation to the minimum amount of water bought, sold, or furnished to the owner or occupant of the house. Such construction would subject the owner and resident of his dwelling or house to an increased rate in the use of his premises, by a third person, though it be one house with a common entrance and hall, and supplied through a single service connection; and although all the occupants of said house may use less than the minimum rate of 20,000 gallons of water per quarter. Such construction sought to be given an ordinance contract, where the basis of class or admeasurement was that of a "dwelling," was denied in Mayor, etc., v. Birmingham W. W. Co., supra, as arbitrary and unreasonable.

It is unnecessary to extend the discussion of the subject of classification in statutes and ordinances, other than to say that all classifications must rest upon some difference which bears a reasonable and just relation to

---

[4] Ante, p. 378.

the act in respect to which the classification is proposed, and should never be made unreasonable and without such basis. City Cleaning Co. v. Birmingham W. W. Co., 85 South. 291; [5] Denson v. Ala. F. & I. Co., 198 Ala. 383, 394, 73 South. 525; Connolly y. Union Sewer Pipe Co., 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679. If the rate, sought to be enforced by the city against complainant in the ownership of his house, be considered as a minimum charge for 20,000 gallons of water per quarter which may be consumed in his house (separate and apart from any other house) and as connected with the city's water mains by a single service pipe furnishing water alone thereto, the classification attempted to be made by the city (in its construction of the statutory powers to prescribe rates and of its ordinance in question), as applied to or against the use and ownership by complainant of his house, is without just foundation (because he has permitted boarders, roomers or tenants to reside therein) and is discriminatory, as related to other houses similarly situated in which no boarders, roomers, or tenants reside.

Admitting for the argument, without deciding that such is the fact, that the charge of $3 per quarter for the minimum quantity of 20,000 gallons of water is a flat rate for the use of water in complainant's house, the construction of the ordinance averred as sought to be given by the city, and as applied to complainant and his house, would render the rate of charge arbitrary and discriminatory, not authorized by law. Acts 1891, p. 243; Ordinance of City of Montgomery, July 27, 1920.

The decree of the circuit court in equity is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.