ALMON, Justice.
This appeal arises from a suit against the City of Loxley, its mayor, and its council members, regarding the city’s extension of its water system to several residential areas outside the city limits. Plaintiffs allege that the city breached its contract to provide adequate water service. They seek an injunction prohibiting the defendants from refusing to construct a water line sufficient to provide adequate water pressure for household use and fire protection. The trial court granted the defendants’ motion for summary judgment.
Plaintiffs Obed Gandy and Ennis Edwards live in Loxley Heights, an unincorporated community approximately one mile west of the corporate limits of Loxley. The United Council of Loxley, Inc., the other named plaintiff, is a charitable corporation formed to educate and foster the civic participation of residents of Beat 9, which includes Loxley Heights and Ellis-ville, another unincorporated community a mile northwest of Loxley Heights. The United Council also purports to represent residents of the Silverhill Road area, south of Loxley. The water system that Loxley installed in these three areas consisted largely of 2-inch water mains. The evidence indicates that fire hydrants require at least 6-inch mains.
The defendants are the City of Loxley; Jack Ryals, individually and in his capacity as mayor of Loxley; Emmett Middleton, Fred Griffen, J.D. Miller, Lee Valenti, and Tom Fincher, in their capacities as members of the Loxley City Council.[1]
In 1978 or 1979, the city began negotiations with the developers of Plantation Hills, a proposed subdivision eight miles from Loxley, northwest of Loxley Heights and Ellisville, to provide water service for Plantation Hills. The Rosinton Water, Sewer and Fire Protection Authority, Inc., was already authorized, under Code 1975, § 11-88-1, et seq., to provide water to a 110-acre area of Baldwin County surrounding Loxley to the west, north, and east. The City[2] of Loxley filed an action which resulted in this Court’s deciding that Lox-ley could expand its water system into the Rosinton service area. Town of Loxley v. Rosinton Water, Sewer and Fire Protection Authority, Inc., 376 So.2d 705 (Ala.1979).
According to the affidavits plaintiffs submitted in opposition to the motion for summary judgment, Ryals, the mayor of Lox-ley, came to a meeting called by the United Council of Loxley on August 7, 1979,[3] to *540 discuss the proposed expansion of the Lox-ley water system and to persuade the residents of the affected areas to choose the Loxley water system over the Rosinton system. The affiants stated that Council Richardson, a member of the United Council, asked the mayor if the proposed water system would include fire protection, to which the mayor answered, “Yes,” and specifically mentioned fire hydrants and 6-inch pipes. Richardson, in his affidavit, said he told this to Edwards.
Later, the city sent employees to the residences to be served by its proposed water system. Both Gandy and Edwards stated in deposition that they signed an agreement to use the city water service and paid a $50 deposit. The complaint alleges that these agents promised that the system would include fire protection. Both Gandy and Edwards stated in deposition that they did not accept the water service after the pipe was laid because they thought the line was too small. Both said they had acceptable sources of water and did not think a 2-inch line would provide sufficient pressure to make it worthwhile to use the city’s water. They said they were primarily interested in fire protection.
By signing the contract to purchase water, Edwards, Gandy, and other residents (including members of the United Council) agreed to connect to the water system, should there be enough applicants to make the project feasible. The contract concluded: “In consideration of the Town using its best efforts to furnish me with water, and other valid considerations, I am voluntarily entering into this contractual agreement.”
The complaint alleges that on November 30, 1979, Ryals, as mayor of Loxley, contracted with the developers of Plantation Hills to provide' water service to the planned subdivision. On March 5, 1980, the Plantation Hills Home Owners Association filed articles of incorporation which listed Ryals as an incorporator and director. The water system installed by Lox-ley included an 8-inch pipeline directly to Plantation Hills, but only 2-inch pipe in many of the intermediate areas where the plaintiffs live. Loxley installed 6-inch pipe in other areas surrounding Loxley Heights and Ellisville, including the Wildwood subdivision. There was testimony, however, that the developers of Plantation Hills paid some of the cost of the 8-inch line.
The complaint includes counts for fraud and breach of contract, but plaintiffs argue only the breach of contract count, so we shall address only that count.
The city acted within its authority in contracting to provide the water service. Tucker v. City of Robertsdale, 406 So.2d 886 (Ala.1981). The city may be held liable if it breaches its contract. Hendrix, Mohr & Yardley, Inc. v. City of Daphne, 359 So.2d 792 (Ala.1978); Walker v. City of Birmingham, 342 So.2d 321 (Ala.1976); Bethune v. City of Mountain Brook, 293 Ala. 89, 300 So.2d 350 (1974); Alabama Water Co. v. Wilson, 214 Ala. 364, 107 So. 821 (1926).
The trial court stated that it based its summary judgment on a ruling that the plaintiffs did not have standing to bring the action:
“The Court: Well, as far as those two Plaintiffs are concerned, I am granting a Motion to Dismiss on the failure to state the claim in the original [Rule] 12(b)(6) [, A.R.Civ.P., motion,] which is converted to a summary judgment [motion] once everything else is filed.
“So, the original 12(b)(6) coupled with pleadings and the depositions were converted into a motion for summary judgment.
“Mr. Brewster: Can I ask you what the basis is? Was that due to the contract? What is that to the basis to? [sic]
“The Court: My limited understanding of the law. I just don’t believe that it is stated in the claim on which it needs to be granted, [sic]
*541 “Mr. Brewster: You can’t give us any further keys so we can try to limit the scope of our appeal?
“The Court: I can’t and frankly, Henry, I know the facts and the situation in the case but I don’t understand the lawsuit from a legal standpoint as far as cause of action. I just don’t believe it stated the cause of action.
“Mr. Brewster: That there is no contract or that the parol evidence would not be allowed in?
“The Court: I don’t believe a cause of action can decide that, the summary judgment as to the liability of the city just all around — (pause)
“I couldn’t see any issue of fact that was left to be resolved. I don’t see any other way to reach any other ruling on that.
“Mr. Brewster: So, if the facts were to come out in the trial that the mayor had represented to these individuals and city council members have represented to these individuals that they would receive a six-inch water line and fire hydrant, that they did sign a contract and put up $50 and did make their claims in time and did have standing, even under those situations, there would be no relief on the basis of the contract action?
“The Court: If they had standing.
“Mr. Brewster: No, we are talking about the two individual plaintiffs.
“The Court: Standing in any event. I agree with all the statements you made as far as the summary judgment is concerned except for the standing. And I think the standing argument is a good one and well taken. Just on that basis, applies not only to the representative but also to the named individuals, [sic]
“Mr. Brewster: But these named individuals aren’t even part of the United Council block and they are suing simply as individuals.
“The Court: I think the standing argument is well taken as to them, too.
Ms. Wolf: I would like to repeat what Henry just said. As to the two individuals, it is a straight simple contract action.
“The Court: This case is simple?
“Ms. Wolf: Well, I think Henry has been clear and I think Henry has presented everything today.”
The court erred in holding that Edwards and Gandy did not have standing to bring the action. See Water Works Board of the City of Birmingham v. Barnes, 448 So.2d 296 (Ala.1983); Alabama Water Co. v. Wilson, supra, Alabama Water Co. v. City of Jasper ex rel. Cain, 211 Ala. 280, 100 So. 486 (1924).
The parties argue in their briefs whether the United Council is a proper party plaintiff. Frazer v. Alabama State Policemen’s Association, 346 So.2d 959 (Ala.1977). But see Alabama Hospital Association v. Dillard, 388 So.2d 903 (Ala.1980); and Alabama Optometric Association v. Alabama State Board of Health, 379 F.Supp. 1332 (M.D.Ala.1974). Even if the United Council is not a real party in interest, the defendants are not entitled to judgment on this ground.
“No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.”
Rule 17(a), A.R.Civ.P. An amendment to substitute the real party in interest, where the defendant has had proper notice of the claim, relates back to the original filing. Board of Water and Sewer Commissioners v. McDonald, 56 Ala.App. 426, 322 So.2d 717, cert. denied, 295 Ala. 392, 322 So.2d 722 (1975). The requirement of substitution of a real party in interest did not arise in this case because the trial court did not rule on the status of the United Council before it granted a final summary judgment for the defendants against all plaintiffs.
*542 Certainly Edwards and Gandy are proper parties plaintiff, and the trial court failed to rule on a petition of three individuals to intervene before it granted summary judgment. Therefore, the issue of the standing of the United Council is not so dispositive as to merit an extensive discussion and resolution of the apparent conflict between Frazer and Dillard, supra.
The judgment of the trial court holding that the plaintiffs do not have standing to bring the action is due to be reversed and the cause remanded. In order to assist the court on the remand of the case, we shall briefly discuss two of the issues raised in the briefs.
The plaintiffs argue that the contract they signed for water service does not state all the conditions of the contract, but should be read in light of the assurances of the mayor that the water system the city proposed to install would use pipes large enough to provide fire protection. Two of the six[4] council members stated that it was their understanding that 6-inch pipe and fire protection would be provided. One of them, Fincher, stated in deposition that he told this to residents of the affected areas. In this context, see Hendrix, Mohr & Yardley, Inc. v. City of Daphne, supra; Walker v. City of Birmingham, supra; and Bethune v. City of Mountain Brook, supra.
Another claim is that the city provided unequal service to similarly situated residents.
In Water Works Board of the City of Birmingham v. Barnes, supra, the trial court held that the plaintiffs had shown that the Board’s rate schedule was unlawful and unreasonable. This Court reversed, holding that the evidence showed a reasonable basis on which the Board could make the differing rates. The related issue of provision of differing service is sufficiently raised in the complaint in the instant case and insufficiently addressed in the defendants’ summary judgment materials to warrant a summary judgment on the record before us.
In City of Montgomery v. Greene, 180 Ala. 322, 60 So. 900 (1913), the city agreed to supply water to residents of the town of Cloverdale, which was then outside the city limits of Montgomery. The city allowed certain residents to attach a water main they had laid to the terminus of the city’s water system. A single meter was attached at the beginning of the plaintiffs’ water line. When the plaintiffs brought suit for an alleged overcharge by the city, this Court held that the city would have to supply the plaintiffs with individually metered water lines and charge them the same rate as it charged for water service inside the city limits. Other residents in the immediate neighborhood were being supplied with individually metered water from the city’s mains. In the course of affirming the injunction in plaintiffs’ favor, the Court stated:
“ ‘The acceptance by a water company of its franchises carried with it the duty of supplying all persons along its mains, without discrimination, with the commodity which it was organized to furnish. All persons are entitled to have the same service on equal terms and uniform rates. ’ City of Mobile v. Bienville Co., 130 Ala. [379,] 384, 30 So. [445,] 447 [1901]. ... It may be that the act of 1891 left it optional with the city as to whether or not it would attempt to supply water beyond its corporate limits to points within its police jurisdiction, but, when it attempts to do so, it must be with uniformity, and without discrimination ; and, if the citizens of Clover-dale are on its mains, they should be given the same uniform rate as is the general rate for others along or upon its mains, and a different rate, fixed wholly upon the corporate lines as the line of demarcation, in the absence of physical differences, is an unreasonable classification. This rule applies to municipalities operating their own water system, as well as to individuals or corporations who *543 undertake to supply water or lights. ‘Water rates paid by consumers are not taxes, but simply the price paid for water as a commodity.’ 30 Am. & Eng.Encyc. Law, 426. Therefore the argument of appellant that the city has the right to discriminate in favor of those who reside within the city limits, and who are liable for city taxes, is without merit, as the supplying of water and the rate charged is in no sense the exaction of a duty or tax, but is the mere furnishing, as a monopoly, a public necessity, and which must be supplied to all consumers alike, and without an unreasonable discrimination either as to price or classification.”
Id., 180 Ala. at 329-30, 60 So. at 902 (citation omitted; emphasis supplied). See Birmingham Water Works Co. v. Brown, 191 Ala. 457, 67 So. 613 (1914).
A similar statement was made in Miller v. Hillview Water Works Project, Inc., 273 Ala. 267, 271, 139 So.2d 337, 339-40 (1962):
“A public utility is obligated to serve all members of the public that it holds itself out to serve, fairly and without discrimination.
“This duty to serve the public exists independent of statute regulating the manner in which such utilities do business. The duty is imposed because they are organized to do a business affected with a public interest and are held out to the public as being willing to serve all of its members.”
(Citations omitted.)
In Alabama Water Co. v. City of Jasper ex rel. Cain, 211 Ala. 280, 100 So. 486 (1924), this Court upheld an injunction prohibiting the utility from laying a 4-inch pipe in violation of its express contract to use 6-inch pipe.
Because the trial court erroneously granted summary judgment on the standing issue and because there appear to be factual questions presented on at least some of the claims in the complaint, the judgment is reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.

.The trial court purported to grant a motion to dismiss in favor of Middleton, Fincher, and Valenti in their individual capacities, but, since they were only sued in their official capacities, we shall treat the case as an appeal from a summary judgment in favor of all defendants.

. The briefs and record before us refer to the "City of Loxley,” whereas the previous case refers to the “Town of Loxley.” We note this change of designation and follow it.

. This was during the pendency of the appeal of Town of Loxley, supra, which was decided on November 2, 1979. The Rosinton Water Au *540 thority had previously sent a spokesman to a United Council of Loxley meeting.

. The mayor sits as a member of the council.